9 F.3d 110
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Nisar N. MULLA, Defendant-Appellant.
 No. 93-1068.
 United States Court of Appeals, Sixth Circuit.
 Oct. 19, 1993.
 
 Before: MILBURN and GUY, Circuit Judges; and KRUPANSKY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Nisar N. Mulla appeals the district court's denial of his motion to withdraw his guilty plea filed pursuant to Federal Rule of Criminal Procedure 32(d) or, alternatively, for a writ of coram nobis. On appeal, the issue is whether the district court erred in denying defendant's motion. For the reasons that follow, we affirm.
 
 I.
 
 2
 Defendant is a citizen of Pakistan who was admitted into the United States in 1975 as a permanent resident. In August 1980, defendant was arrested and then charged with several federal drug offenses. Pursuant to a plea agreement in which defendant agreed to cooperate with the government, defendant pled guilty on December 15, 1980, to count 1, conspiracy to distribute and to possess with intent to distribute cocaine, and the United States dropped the other counts in the indictment returned against defendant and others. On May 8, 1981, the district court sentenced defendant to a three-year probation term, which defendant completed in May 1984.
 
 
 3
 On March 17, 1983, the Immigration and Naturalization Service ("INS") entered an order of deportation against defendant on the basis of his drug conviction. INS instructed defendant to report on July 6, 1984, for deportation to Pakistan. However, on July 6, 1984, defendant filed a civil case in district court seeking to enjoin his deportation and to enforce a plea agreement between the defendant and the United States. The civil case was resolved in May 1989 when the parties agreed to return to the administrative proceedings before INS.
 
 
 4
 On December 29, 1987, defendant filed a motion to withdraw his guilty plea or, alternatively, for a writ of coram nobis to vacate his conviction and sentence. In his motion, defendant alleged that in addition to dropping other drug charges, the plea agreement included the government's promise not to deport him. Defendant claimed that the government had violated the plea agreement by ordering his deportation, and therefore he was entitled to withdraw his guilty plea or to a writ of coram nobis vacating his conviction. At defendant's request, the district court held the case in abeyance for several years while defendant pursued other methods of preventing his deportation; namely, his civil suit and his appeals in the INS administrative proceedings.
 
 
 5
 On November 4, 1991, the government filed a motion to dismiss the defendant's motion for lack of jurisdiction. The government argued that the version of Federal Rule of Criminal Procedure 32(d) in effect at the time of defendant's motion to withdraw his guilty plea controlled this case. That version of Rule 32(d) states:
 
 
 6
 If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, imposition of sentence is suspended, or disposition is had under 18 U.S.C. Sec. 4205(c), the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason. At any later time, a plea may be set aside only on direct appeal or by motion under 28 U.S.C. Sec. 2255.
 
 
 7
 The government argued that the defendant's motion was not a direct appeal or a motion under 28 U.S.C. Sec. 2255, and therefore the district court did not have jurisdiction to hear the motion. On the other hand, defendant contended that the version of Rule 32(d) before it was amended in 1983, the version in effect at the time of defendant's guilty plea, controlled this case. Before 1983, Rule 32(d) stated:
 
 
 8
 A motion to withdraw a plea of guilty or of nolo contendere may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.
 
 
 9
 Defendant argued that under the pre-1983 Rule 32(d), it was irrelevant that his motion was not made as a direct appeal or under 28 U.S.C. Sec. 2255 and that the district court could allow him to withdraw his guilty plea to correct "manifest injustice." In a subsequent hearing, the district court dismissed the government's motion.
 
 
 10
 On December 19, 1991, the district court held an evidentiary hearing in an effort to determine whether the plea agreement included a promise not to deport defendant. On May 6, 1992, the district court heard the parties' arguments on defendant's motion and then took the motion under advisement. On November 23, 1992, the district court issued an order and opinion denying defendant's motion to withdraw the guilty plea or, alternatively, for writ of coram nobis to vacate his conviction and sentence. The district court held that the plea agreement did not include a promise by the government not to deport defendant and that defendant did not meet the threshold requirements for withdrawing his guilty plea or for a writ of coram nobis. This timely appeal followed.
 
 II.
 A.
 
 11
 This court reviews the district court's denial of a defendant's motion to withdraw a guilty plea only for an abuse of discretion. E.g., United States v. Spencer, 836 F.2d 236, 238 (6th Cir.1987). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." Christian Schmidt Brewing Co. v. G. Heileman Brewing Co., 753 F.2d 1354, 1356 (6th Cir.), cert. dismissed, 469 U.S. 1200 (1985).
 
 
 12
 Under the version of Rule 32(d) applicable at the time defendant entered his guilty plea, a defendant seeking to withdraw his guilty plea after sentencing bears the burden of proving that such action is necessary to correct "manifest injustice." United States v. Teller, 762 F.2d 569, 574 (7th Cir.1985). The district court, however, applied the "fair and just reason" standard, which is applicable, under the current version of Rule 32(d), only to motions to withdraw a guilty plea before sentencing. The "fair and just reason" standard is more permissive than the "manifest injustice" standard. See id.; United States v. Trott, 779 F.2d 912, 915 (3d Cir.1985). The district court did not decide which standard should apply to this case because it found that defendant failed to meet the more liberal "fair and just reason" standard.
 
 
 13
 This court has held that the district court may consider the following factors to determine whether a defendant has established a "fair and just reason": (1) whether the defendant has asserted and maintained his innocence, (2) the length of time between the guilty plea and the motion to withdraw it, (3) the circumstances underlying the entry of the guilty plea and the defendant's background, (4) the reason the grounds for withdrawal were not presented to the court at an earlier point in the proceedings, and (5) the potential prejudice to the government. E.g., Spencer, 836 F.2d at 238-39. The district court did not consider the fifth factor, prejudicial effect on the government, because this factor may not be considered until the defendant establishes a "fair and just" reason for the withdrawal of the plea. United States v. Alexander, 948 F.2d 1002, 1004 (6th Cir.1991) (per curiam), cert. denied, 112 S.Ct. 1231 (1992).
 
 
 14
 The district court determined that the first four factors militated against granting defendant's motion to withdraw his guilty plea. Defendant had never, even at this stage, asserted his innocence; in fact, at the plea hearing, defendant admitted to the acts which were the basis for his conviction. Defendant filed his motion to withdraw his plea seven years after he entered the plea and three years after he had completed his probation, an intermission far exceeding the time period ordinarily considered appropriate for motions to withdraw or vacate. See id. As to the third factor, the district court determined that the circumstances of the entry of the guilty plea were not suspect. Defendant spoke excellent English, had graduated from college in the United States, and had been successful in his business ventures. The district court was satisfied that the defendant understood the nature of the charges and the penalties provided by law and that the plea had a sufficient factual basis. As to the fourth factor, defendant maintained that he did not mention the promise not to deport him because he believed the agreement was to be kept secret. However, the district court found that such a promise was not part of the plea agreement and, therefore, was not convinced by this argument.
 
 
 15
 Defendant does not dispute the district court's application of these factors but contends that he is entitled to relief, notwithstanding these factors, because the government breached the plea agreement by instituting deportation proceedings against him. Defendant's argument is not well taken because the district court found that the plea agreement did not contain a promise not to deport defendant, and this finding is not clearly erroneous.
 
 
 16
 The district court supported its finding of no promise by examining the defendant's testimony at earlier proceedings about the substance of the plea agreement. Neither at the time defendant pled guilty nor at the other proceedings at which defendant was asked about the substance of the plea agreement did defendant mention the alleged promise not to deport him. The colloquy at the plea hearing was as follows:
 
 
 17
 THE COURT: Other than the agreement, which apparently you and your attorney have entered into with the United States government, is the plea which you have entered the result of any force or threats or promises that have been made to you?
 
 
 18
 THE DEFENDANT: No, your Honor.
 
 
 19
 * * *
 
 
 20
 MR. STEELE [Assistant United States Attorney]: Your honor, if I might, I could state the full extent of the plea bargain at this time. As the court indicated, if Mr. Mulla's plea is accepted, the government will dismiss the remaining count in this indictment. Further, Mr. Mulla has a total of four other cases pending in this district, three of which are the subject of a plea bargain.... The count and charges in those cases will also be dismissed at the time of Mr. Mulla's sentencing on this plea, if Mr. Mulla lives up to the terms of his plea bargain. Further, it is the plea bargain in this case that Mr. Mulla will testify truthfully at the trials of the other defendants and codefendants in the indictments which are pending in this district. Further, that the Drug Enforcement Administration and the United States Attorney's office will advise this Court of the nature and extent of Mr. Mulla's cooperation.
 
 
 21
 THE COURT: Mr. Spies, did that accurately state the agreement as you understand it?
 
 
 22
 MR. SPIES [Defense Counsel]: Yes. With the addition it is my understanding there is no contemplation of bringing any other charges against Mr. Mulla.
 
 
 23
 MR. STEELE: That is correct, Your Honor.
 
 
 24
 * * *
 
 
 25
 THE COURT: All right. Mr. Mulla, you heard the comments made by the Assistant U.S. Attorney and by your own attorney. Do you understand the terms of that agreement?
 
 
 26
 THE DEFENDANT: Yes, Your Honor.
 
 
 27
 THE COURT: And that is satisfactory to you?
 
 
 28
 THE DEFENDANT: Yes, Your Honor.
 
 
 29
 THE COURT: And it is your understanding that the agreement as set forth in the record is the entire agreement between you and the government?
 
 
 30
 THE DEFENDANT: Yes, Your Honor.
 
 
 31
 J.A. at 304-307. In August 1981, while testifying at the trial of Andrew Menichino, an individual who was caught with defendant's help, defendant was questioned about his plea agreement with the government.
 
 
 32
 Q. Did you enter into a plea bargain with the government? * 110
 
 
 33
 A. Yes, I did.
 
 
 34
 Q. Can you tell the jury what your understanding of that plea bargain is?
 
 
 35
 A. The plea bargain that I got from the DEA, they will dismiss all the charges and keep one count, one charge which would be, they would recommend to the judge for my probation.
 
 
 36
 Q. And did you receive probation?
 
 
 37
 A. Yes, I did.
 
 
 38
 Q. What was your understanding that the DEA recommended to the court?
 
 
 39
 * * *
 
 
 40
 A. ... if I cooperate with them, they will drop and keep one charge.... And ... recommend probation....
 
 
 41
 Q. Anything else? ...
 
 
 42
 A. No. There isn't anything else involved.
 
 
 43
 J.A. at 55-58. The district court concluded "absent any evidence to the contrary, I must assume that defendant exercised his free choice in entering the agreement, and that the plea agreement did not include the promise not to deport Mulla." J.A. at 21-22.
 
 
 44
 Defendant argues that "the notion that the agents made no promise regarding deportation to obtain Mr. Mulla's cooperation is contrary to the facts and to reason." Brief of Appellant at 16. Defendant points to testimony of DEA agent Richard Robins that shortly after defendant's arrest, Robins discussed defendant's deportation concerns with defendant. J.A. at 341. Defendant also focuses on notes kept by defendant's attorney at the time of the conviction which indicate that Robins told the attorney that defendant was "safe" with respect to deportation. Defendant takes great liberties with these notes. The attorney's notes of the conversation state that Robins "would say 'he cooperated' to immigration, probably safe ... if deported can't get back for a year." J.A. at 143. These notes, if evidence at all, do not indicate that there was an agreement not to deport defendant; on the contrary, they support the district court's conclusion that there was no such agreement.
 
 
 45
 Defendant also points to testimony by J. Terrance Dillon, the Assistant United States Attorney who dealt with defendant in the cases in which defendant was a cooperating witness, about conversations he had with defendant concerning deportation. These conversations do not mention any promise in the plea agreement. Furthermore, these conversations took place after defendant pled guilty and therefore are not significantly probative of what was actually promised at the time of the plea agreement. Therefore, the district court's finding, based on defendant's testimony at the plea hearing and later court proceedings, that the plea agreement did not include a promise not to deport defendant was not clearly erroneous. Because the only ground on which the defendant argues that the district court erred has no factual basis, the district court did not abuse its discretion in denying defendant's motion to withdraw his guilty plea.
 
 B.
 
 46
 The district court also denied the defendant's motion in the alternative for a writ of coram nobis. A writ of coram nobis "is an extraordinary writ and jurisdiction of the court to grant relief is of limited scope." United States v. Norman, 391 F.2d 212, 213 (6th Cir.) (quoting United States v. Cariola, 323 F.2d 180 (3d Cir.1963)), cert. denied, 390 U.S. 1014 (1968). "Under coram nobis the court reviews errors of fact committed in the original proceeding which are 'of the most fundamental character, that is, such as rendered the proceeding itself invalid.' " Flippins v. United States, 747 F.2d 1089, 1091 (6th Cir.1984) (per curiam) (quoting United States v. Mayer, 235 U.S. 55, 69 (1914). To be entitled to this relief, a defendant must demonstrate that there is (1) an error of fact, (2) unknown at the time of the trial, (3) of a fundamentally unjust character which probably would have altered the outcome of the challenged proceeding if it had been known. Id.
 
 
 47
 The district court denied the motion because defendant failed to show that there was an error of fact. Defendant argued that the plea agreement included a promise not to deport and that the breach of this promise constituted an error of fact. As discussed above, the district court's finding of no promise was not clearly erroneous. Because this is the only "error of fact" submitted by defendant, the district court did not err in denying defendant a writ of coram nobis.
 
 III.
 
 48
 For the reasons stated, the district court is AFFIRMED.