**Donnell FLIPPINS,**
**Petitioner-Appellant,**

v.

**UNITED STATES of America,**
**Respondent-Appellee.**

**No. 84–5060.**

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 25, 1984.

Decided Nov. 9, 1984.

Donnell Flippins, pro se.

Willie E. Peale, Jr. (argued), Frankfort, Ky. (court-appointed), for petitioner-appellant.

Ronald Meredith, U.S. Atty., Hancy Jones, III, Alan Sears (argued), Asst. U.S. Attys., Louisville, Ky., for respondent-appellee.

Before JONES and CONTIE, Circuit Judges, and GILMORE, District Judge.*

PER CURIAM.

The petitioner, Donnell Flippins, appeals from the district court's summary dismissal of his petition for a writ of error coram nobis. We reverse and remand for an evidentiary hearing on the merits of petitioner's claim.

Donnell Flippins is currently serving a ten-year sentence on one count of Criminal Possession of a Forged Instrument, and one count as a Persistent Felony Offender, First Degree. Both counts originate under Kentucky law. Flippins' petition for a writ of error coram nobis challenges a 1971 federal felony conviction. Flippins seeks removal of the present effects of the 1971 federal conviction under Kentucky's persistent felony offender statute. The 1971 conviction in part depended upon a 1969 state felony conviction.

In 1971, Flippins was charged with attempting to board an aircraft with a weapon, unlawful possession of a firearm, and unlawful transportation of a firearm. The statutes upon which the second and third counts were based made it unlawful for a convicted felon to possess a firearm and to transport a firearm through interstate commerce. Those counts were based upon evidence that in 1969 Flippins had pled guilty to Kentucky criminal charges of attempted robbery and carrying a concealed weapon. Flippins pled guilty to all three counts in 1971.

Flippins alleges that his guilty plea was coerced by his court-appointed counsel and that the counsel's assistance during trial was otherwise deficient. Counsel was appointed for Flippins at the time of his release on bail several months before trial. He claims to have attempted unsuccessfully to contact his attorney through six phone calls and two letters. He first met the appointed attorney when the attorney appeared beside him as Flippins was called to the bench. The attorney apparently was unfamiliar with the charges in the case and had not even read the indictment. At the attorney's request, a two-hour recess was granted so that he could consult with Flippins.

Flippins claims that the attorney then asked him two questions and left for a luncheon appointment. The attorney reappeared only moments before the court reconvened. Flippins contends he told the attorney that the 1969 conviction was faulty and that the attorney replied, "that can be straightened out later."

Flippins further claims that the attorney then coerced him into pleading guilty by stating that if he pled guilty, the attorney would get him a suspended sentence. Flippins claims the attorney told him that the judge did not tolerate defendants who "talked back" to him. He claims that the attorney told him to agree with the judge's questions. Flippins says counsel promised to get him a suspended sentence, represented that he and the judge were friends, and said that Flippins had "no defense in this case at all."

The trial transcript reveals that the trial judge tested Flippins' plea along the lines required by Federal Rule of Criminal Procedure. Flippins answered that he understood he was not compelled to plead guilty, that he was satisfied with the advice of counsel, and then affirmatively responded to each of the judge's other questions. The record also reveals that after questioning Flippins, the judge asked him whether he wanted to speak on his own behalf. The court then interrupted the defendant as he spoke of mitigating circumstances.

Flippins claims that, after the plea was entered, his defense counsel promised to examine the legality of the 1969 state court conviction. He claims he never again heard from the attorney.

In 1980, Flippins was convicted of four felony counts involving forgery, credit card

---

* The Honorable Horace W. Gilmore, District Judge, United States District Court for the East- ern District of Michigan, sitting by designation.

fraud, theft, and receiving stolen property. In 1982, he was convicted of one count of forgery and one count as a persistent felony offender in the first degree under Kentucky law. The 1971 felonies and the 1980 felonies each serve as one felony conviction for the purposes of Kentucky's persistent offender statute. If the 1971 felony were vacated his present sentence would be reduced because only one prior felony conviction would remain and thus he would be only a second-degree persistent felon.

On or about June 22, 1983, proceeding pro se, Flippins filed the petition for writ of error coram nobis on which he now appeals to this court. Three months later, after twice extending the Government's time to reply, a magistrate recommended summary dismissal of the petition. The magistrate concluded in part that the issues presented did not require an evidentiary hearing. The district court adopted the magistrate's Findings of Fact, Conclusions of Law and Recommendation. This appeal followed.

■ The writ of error coram nobis is available to a convicted criminal at any time following the entry of judgment against him or her. A writ of error coram nobis may be sought where, as here, the challenged sentence has been completely served. *United States v. Dellinger*, 657 F.2d 140, 144 (7th Cir.1981); *United States v. Norman*, 391 F.2d 212, 213 (6th Cir.), *cert. denied*, 390 U.S. 1014, 88 S.Ct. 1265, 20 L.Ed.2d 163 (1968). The court's scope of review of the challenged judgment on a petition for writ of error coram nobis is of limited scope. *United States v. Norman*, 391 F.2d at 213. Under coram nobis the court reviews errors of fact committed in the original proceeding which are "of the most fundamental character, that is, such as rendered the proceeding itself invalid." *United States v. Mayer*, 235 U.S. 55, 69, 35 S.Ct. 16, 19–20, 59 L.Ed. 129 (1914); *see also United States v. Morgan*, 346 U.S. 502, 512, 74 S.Ct. 247, 253, 98 L.Ed. 248 (1954).

■ The Eighth Circuit has interpreted this standard to require that at a minimum such relief is not to be granted "unless it is probable that a different result would have occurred had the supposed error of fact been known to the trial court." *Bateman v. United States*, 277 F.2d 65, 68 (8th Cir. 1960). A fair statement of the basis for granting a writ of error coram nobis is demonstration of (1) an error of fact, (2) unknown at the time of trial, (3) of a fundamentally unjust character which probably would have altered the outcome of the challenged proceeding if it had been known.

■ The issue on appeal, however, is not whether the district court should have granted Flippins' petition, but whether the court should have granted petitioner an evidentiary hearing at which he could have produced evidence to support the allegations of his petition.

Flippins alleged not only that his counsel arrived in court uninformed of the particulars of the case, but also that the attorney then failed to inform himself adequately. If Flippins' allegations are true, his court-appointed attorney coerced a guilty plea and otherwise silenced the petitioner. Without undertaking even the slightest investigation, the attorney concluded that Flippins had no defense to the charges. Having told his client to plead guilty, he then told him not to speak to the judge, who he characterized as intolerant and inaccessible to defendants. The attorney then explained that through personal contact with his "old friend the judge," he would get Flippins a suspended sentence. Following the hearing, the attorney promised to investigate the validity of Flippins' 1969 state conviction, upon which two of the 1971 counts were based. Petitioner alleges that the attorney never did investigate that prior conviction.

Minimal diligence in representing Flippins would entail an investigation of the validity of the challenged 1969 Kentucky conviction, upon which two of three felony counts were based. If Flippins' allegations regarding the attorney's private threats and promises are true, then Flippins believed that the hearing before the judge was merely for show. He may have be-

lieved that the decisive events in his case would occur in private between the judge and his attorney. If so, and if he acted in accord with that belief, the validity of Flippins' guilty plea, and of the hearing itself, is subject to severe doubt.

In *Blackledge v. Allison,* 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977), a petitioner for writ of habeas corpus had plead guilty to the state charge of attempted safe robbery which he later challenged in federal court. Before accepting the petitioner's guilty plea, the trial judge had questioned him in open court regarding his understanding of the charge, its consequences, and the voluntariness of his plea. The minimum prison sentence for the charge was 10 years and the maximum was life. The petitioner answered that he properly understood each matter on which the judge questioned him. The trial court then accepted the petitioner's plea and sentenced him to 17–21 years. Petitioner challenged his conviction on the ground that his attorney claimed to have spoken with the judge and the prosecutor and arranged for a minimum sentence in return for a guilty plea. Petitioner alleged that he pled guilty on the basis of the attorney's representation. He also claimed that he followed the attorney's instructions to answer the trial judge's questions so that the court would accept his guilty plea. The district court summarily dismissed the petitioner's claim. On review the Supreme Court in *Blackledge* defined the relevant issue as whether the petitioner's claims were so "palpably incredible" or "patently frivolous or false" that summary dismissal was warranted. *Id.* at 76, 97 S.Ct. at 1630. The Court then affirmed the court of appeals' ruling that required the district court to provide the *Blackledge* petitioner with an evidentiary hearing.

We do not find that Flippins' allegations are so "palpably incredible" that the district court's summary dismissal was warranted. Therefore, we REVERSE the district court and REMAND for an evidentiary hearing.