**Leonard Ray BLANTON, Petitioner–Appellant,**

v.

**UNITED STATES of America, Respondent–Appellee.**

**No. 95–6141.**

United States Court of Appeals, Sixth Circuit.

Argued March 26, 1996.

Decided Aug. 28, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied Oct. 1, 1996.

---

1. The district court reduced the award for past   medical expenses from $20,000 to $19,021.59.

Russell C. Winston (briefed), Mike Roberts (argued and briefed), Memphis, TN, for Petitioner–Appellant.

Robert C. Watson, Asst. U.S. Attorney (argued and briefed), Office of the U.S. Agency, Nashville, TN, for Respondent–Appellee.

Before: KENNEDY and MOORE, Circuit Judges; WELLS, District Judge.*

MOORE, Circuit Judge.

Petitioner–Appellant Leonard Ray Blanton appeals the district court's order denying his petition for a writ of error coram nobis to vacate his convictions for violations of 18 U.S.C. §§ 371 and 1951. Blanton asserts that he is entitled to the writ because his counsel at trial was not properly licensed to practice law in Tennessee, and thus provided ineffective assistance of counsel per se. For the reasons that follow, we affirm the judgment of the district court.

## I. Background

Blanton was the governor of Tennessee from 1975 to 1979. In 1980, Blanton and two of his aides were indicted for their parts in a scheme to provide liquor licenses to persons who would agree to pay Blanton a portion of their profits from the liquor licenses. Blanton was indicted on nine counts of mail fraud in violation of 18 U.S.C. § 1341; one count of violating the Hobbs Act, 18 U.S.C. § 1951, which prohibits the use of violence or threats of violence to interfere with interstate commerce; and one count of conspiracy in violation of 18 U.S.C. § 371.

All of the district judges in the Middle District of Tennessee recused themselves from Blanton's case, so this court designated Circuit Judge Peck to preside over the trial. After the trial had begun, Circuit Judge Brown replaced Judge Peck as trial judge. Blanton's lead trial attorney was John S. McLellan Jr. ("McLellan"), who was assisted by his son John S. McLellan III, and Neal P. Rutledge. At the trial, the jury found Blanton guilty of all of the charges against him,

and found his co-defendants guilty of mail fraud and conspiracy. Blanton was sentenced to three years of imprisonment and fined $11,000.

Blanton's convictions were affirmed on direct appeal. Although a panel of this court initially reversed the convictions because of the way in which the district court conducted the voir dire, *United States v. Blanton,* 700 F.2d 298 (6th Cir.1983), that decision was vacated by the court's decision to rehear the case en banc. The en banc court affirmed Blanton's convictions, and the Supreme Court denied review. *United States v. Blanton,* 719 F.2d 815 (6th Cir.1983), *cert. denied,* 465 U.S. 1099, 104 S.Ct. 1592, 80 L.Ed.2d 125 (1984). This court also affirmed the district court's denial of Blanton's motion for a new trial based on newly discovered evidence. *United States v. Allen,* 748 F.2d 334 (6th Cir.1984). Blanton then filed a § 2255 motion, which the district court denied. This court affirmed the denial of Blanton's § 2255 motion because it simply reiterated issues already decided on direct appeal. *Blanton v. United States,* 1987 WL 44443 (6th Cir. September 23, 1987) (unpublished).

In 1987, the Supreme Court decided *McNally v. United States,* 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), which eliminated the use of the intangible rights theory of mail fraud, under which Blanton and his co-defendants had been convicted. Blanton and his co-defendants moved to have their convictions set aside, apparently pursuant to 28 U.S.C. § 2255. The district court granted Blanton's motion to vacate his mail fraud convictions, but left standing the Hobbs Act and conspiracy convictions. In October 1988, Blanton's appeal of that order was dismissed by agreement of the parties. McLellan, assisted by other attorneys, represented Blanton on direct appeal and in both of the § 2255 proceedings.

In 1991, Blanton filed his petition for a writ of error coram nobis, alleging various incidents in which his trial counsel, McLellan, was ineffective. Blanton alleged that McLel-

---

* The Honorable Lesley Brooks Wells, United States District Judge for the Northern District of Ohio, sitting by designation.

lan was ineffective because, among other things, McLellan allegedly allowed Blanton to testify on cross-examination while Blanton was intoxicated, McLellan failed to call an expert to testify as to the value of some stock involved in the illegal transactions, and McLellan allegedly failed to consult Blanton before dismissing the appeal of Blanton's second § 2255 motion. In February 1992, Blanton amended his coram nobis petition to add his claim that McLellan was improperly licensed.

Blanton alleged that McLellan was not licensed to practice law by the state of Tennessee, and thus provided ineffective assistance of counsel per se. McLellan apparently had failed the bar exam in 1944, but had been admitted to the Tennessee Supreme Court bar in 1953. Report of Investigative Committee Appointed By Chief Justice, Tennessee Supreme Court ("Investigative Committee Report"), J.A. at 1061, 1068. McLellan had practiced for more than 30 years, was a prominent labor lawyer, and had held office in several bar associations. *Id.* at 1061–63. In 1975, the Tennessee Supreme Court received a complaint alleging that McLellan was not properly licensed. Letter of 3/27/75 from Chief Justice Fones to McLellan, J.A. at 1052. The Tennessee Supreme Court appointed a committee to investigate the charges, and the committee concluded that "there is strong reason to believe [McLellan] has [held himself out as a lawyer] without passing the bar exam and without receiving a license," and that McLellan should be enjoined from holding himself out as a lawyer. Investigative Committee Report, J.A. at 1070–71. The Tennessee Supreme Court referred the matter to the Tennessee Bar Association so that, in accordance with Tennessee Supreme Court procedure at the time, the bar association could bring suit against McLellan. After its own investigation, the bar association declined to take any action against McLellan. Letter of 8/29/77 from Robert L. McMurray to Chief Justice Cooper, J.A. at 1092 (stating bar association will not take "any legal action against Mr. McLellan regarding his status as a licensed attorney"). In 1978, the Chief Justice of the Tennessee Supreme Court sent McLellan a letter, which stated that the bar association "will take no further action in connection with your license to practice law in this state," and that no further action was contemplated. Letter of 6/1/78 from Chief Justice Henry to McLellan, J.A. at 1093. After the investigation concluded, the Tennessee Supreme Court and its licensing bodies treated McLellan as if he were licensed. McLellan practiced in Tennessee courts and paid bar membership dues that were accepted by the proper authorities. In 1994, the Tennessee Supreme Court granted a joint request by McLellan and Disciplinary Counsel of the Board of Professional Responsibility of the Supreme Court of Tennessee that McLellan's "law license be transferred to disability inactive status." May 9, 1994 Order of the Tennessee Supreme Court, J.A. at 1197.

The district court dismissed the ineffective assistance claims in Blanton's petition, except for the licensing allegation, in an August 1992 order. After additional discovery and briefing, the district court dismissed Blanton's claim regarding the status of McLellan's law license in an August 1995 opinion and order. *Blanton v. United States,* 896 F.Supp. 1451, 1455 (M.D.Tenn.1995). The district court held that Blanton had failed to prove that he suffered from an ongoing civil disability, and thus he could not petition for a coram nobis writ. *Id.* at 1457. The district court also held that it had no power to determine whether McLellan was licensed to practice law, *id.* at 1466–67, and that McLellan's representation, even if he were not licensed, would not be ineffective assistance of counsel per se. *Id.* at 1464. Blanton then appealed from the August 1995 order to this court.

## II. Analysis

■ We review de novo the district court's determination of legal issues in its denial of Blanton's petition for a writ of error coram nobis. *See Hirabayashi v. United States,* 828 F.2d 591, 594 (9th Cir.1987). However, we must uphold the district court's findings of fact unless they are clearly erroneous. *Id.*

## A. Coram Nobis In General

The writ of error coram nobis is used to vacate a federal sentence or conviction when a § 2255 motion is unavailable—generally, when the petitioner has served his sentence completely and thus is no longer "in custody" as required for § 2255 relief. A federal court's power to issue a coram nobis writ comes from the All Writs Act, 28 U.S.C. § 1651.[1] *See United States v. Morgan*, 346 U.S. 502, 506, 74 S.Ct. 247, 250, 98 L.Ed. 248 (1954) ("Since this motion in the nature of the ancient writ of coram nobis is not specifically authorized by any statute enacted by Congress, the power to grant such relief, if it exists, must come from the all-writs section of the Judicial Code"). The Supreme Court resurrected the writ in the *Morgan* decision, but limited its use to "circumstances compelling such action to achieve justice." *Morgan*, 346 U.S. at 511, 74 S.Ct. at 252.

■ Coram nobis may be used only to review errors "of the most fundamental character, that is, such as rendered the proceeding itself invalid." *Flippins v. United States*, 747 F.2d 1089, 1091 (6th Cir.1984) (per curiam) (quoting *United States v. Mayer*, 235 U.S. 55, 69, 35 S.Ct. 16, 19–20, 59 L.Ed. 129 (1914)), *cert. denied*, 481 U.S. 1056, 107 S.Ct. 2197, 95 L.Ed.2d 852 (1987). The *Flippins* court stated that a coram nobis petition will be granted only when the petitioner demonstrates:

(1) an error of fact,

(2) unknown at the time of trial,

(3) of a fundamentally unjust character which probably would have altered the outcome of the challenged proceeding if it had been known.

*Id.*

## B. Application Of Laches Doctrine To Coram Nobis Petitions

The government argues that Blanton's coram nobis petition should be barred by the doctrine of laches because Blanton waited ten years after his conviction to file his petition. We believe that the doctrine of laches should apply to coram nobis proceedings because otherwise there would be essentially no time limits for bringing coram nobis claims. Moreover, sound policy dictates that coram nobis claims be brought as early as possible to prevent the suffering imposed by illegal convictions and to prevent the government from being prejudiced in its efforts to reprosecute meritorious cases.

In *Morgan*, the Supreme Court stated that coram nobis petitioners had to demonstrate that "sound reasons exist[ed] for failure to seek appropriate earlier relief." 346 U.S. at 512, 74 S.Ct. at 253. This language indicates that timeliness should be a consideration in determining whether to grant coram nobis petitions. This court also has implied that laches could apply to a coram nobis proceeding. In *Johnson v. United States*, 334 F.2d 880, 883–84 (6th Cir.1964), *cert. denied*, 380 U.S. 935, 85 S.Ct. 942, 13 L.Ed.2d 822 (1965), this court refused to consider a Rule 35 motion as a coram nobis petition because the petitioner's delay was unreasonable and caused prejudice to the government. The First and Second Circuits, citing the *Morgan* "sound reasons" language, also have indicated that they would bar coram nobis relief if a petitioner delayed too long in bringing his claim. *See Hager*, 993 F.2d at 5; *Nicks*, 955 F.2d at 167–68. Finally, the Seventh Circuit has held that the doctrine of laches does apply to coram nobis proceedings. *United States v. Correa–DeJesus*, 708 F.2d 1283, 1286 (7th Cir.), *cert. denied*, 464 U.S. 1010, 104 S.Ct. 530, 78 L.Ed.2d 712 (1983).

■ Although laches may apply to coram nobis proceedings, the doctrine does not bar Blanton's petition. Blanton's coram nobis petition involves claims of ineffective assistance by McLellan, and those claims could not have been brought in his previous appeals or habeas petitions because McLellan represented him during those matters. The appeal of Blanton's second habeas petition was dismissed in late 1988, and McLellan's representation of Blanton apparently ended at that time. Blanton filed his coram nobis petition in late 1991. Three years was not an

---

1. 28 U.S.C. § 1651 states in pertinent part that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

unduly long delay; it was a reasonable amount of time for Blanton to obtain new counsel and file suit.

## C. Ongoing Civil Disability As A Requirement In Coram Nobis Cases

The district court held that a coram nobis petitioner must demonstrate an ongoing civil disability in order for the writ to issue, and that Blanton had not made the requisite showing of an ongoing civil disability. Blanton makes two arguments relating to his alleged ongoing civil disabilities. First, Blanton argues that the complained-of denial of counsel is assumed to be prejudicial so that no other showing of civil disability is required. Second, Blanton claims that his convicted felon status prevents him from being bonded, which is necessary for some of the types of employment for which he claims to be suited.

The Seventh Circuit has set out three requirements that a harm must meet before it can be considered a civil disability sufficient to warrant coram nobis relief.

First, the disability must be causing a present harm; it is not enough to raise purely speculative harms or harms that occurred completely in the past. Second, the disability must arise out of the erroneous conviction. Third, the potential harm to the petitioner must be more than incidental.

United States v. Craig, 907 F.2d 653, 658 (7th Cir.1990) (footnote omitted), amended on other grounds, 919 F.2d 57 (7th Cir.), cert. denied, 500 U.S. 917, 111 S.Ct. 2013, 114 L.Ed.2d 100 (1991). Civil disabilities include the loss of the rights to vote, hold occupational licenses, or bear arms, and the imposition of enhanced penalties for future sentences. See United States v. Keane, 852 F.2d 199, 203 (7th Cir.1988), cert. denied, 490 U.S. 1084, 109 S.Ct. 2109, 104 L.Ed.2d 670 (1989).

Neither the Supreme Court nor the Sixth Circuit have spoken on the issue of whether proof of an ongoing civil disability is required in coram nobis cases, and courts that have considered the issue are divided. The Supreme Court has decided only one coram nobis case in the last forty-two years, Morgan, and that opinion is ambiguous concerning whether proof of an ongoing civil disability is required. In justifying the use of coram nobis in Morgan, the Court stated that "[a]lthough the term has been served, the results of the conviction may persist. Subsequent convictions may carry heavier penalties, civil rights may be affected." 346 U.S. at 512–13, 74 S.Ct. at 253. The Court's use of the word "may" can be read as permitting coram nobis upon a presumption that convictions carry penalties and stigmas instead of requiring a finding of a specific ongoing disability. However, Morgan could be narrowly interpreted, since it involved a defendant whose state sentence was increased based on his allegedly erroneous federal conviction, which undercuts the contention that the Morgan Court would allow coram nobis based on a presumption of civil disability flowing from all convictions. Id. at 504, 74 S.Ct. at 248–49.

Similarly, the Sixth Circuit also has not decided whether an ongoing civil disability is required for coram nobis relief. In Gareau v. United States, 474 F.2d 24, 25 (6th Cir. 1973) (per curiam), an inmate in custody on a state sentence filed a habeas corpus petition regarding a federal conviction for which he had already served his sentence. The inmate alleged that his prior federal conviction increased the amount of time he would have to serve in state prison before being eligible for parole. This court held that the district court should have considered the petition as requesting a writ of error coram nobis, and stated that "the collateral consequences of appellant's federal conviction demonstrate that his claim is not moot." Id. This language could be read to imply that the claim of a coram nobis petitioner who could not demonstrate such collateral consequences would be considered moot. In Flippins, this court discussed the standards for coram nobis relief without mentioning the civil disability issue, but the petitioner in that case was serving a sentence that had been enhanced because of a prior federal conviction. 747 F.2d at 1091. Such a sentence enhancement clearly would constitute an ongoing civil disability. See Keane, 852 F.2d at 203.

Most of the courts of appeals that have decided the issue have held that coram nobis petitioners are required to show that their allegedly wrongful conviction actually results in an ongoing civil disability. For example, the Seventh Circuit consistently has held that a showing of an ongoing civil disability is required to obtain coram nobis relief. *Craig*, 907 F.2d at 657; *United States v. Bush*, 888 F.2d 1145, 1146 (7th Cir.1989); *Keane*, 852 F.2d at 203. The Seventh Circuit reasoned that an ongoing civil disability requirement is needed to preserve the finality of criminal judgments and as a substitute for the "custody" requirement of § 2255. *Keane*, 852 F.2d at 202–04 (finality rationale); *Bush*, 888 F.2d at 1147–48 (custody substitute rationale).

The First, Second, Third, Fifth, and Eighth Circuits have followed the Seventh Circuit's lead by requiring coram nobis petitioners to prove that their allegedly invalid convictions produce ongoing collateral consequences. *Hager v. United States*, 993 F.2d 4, 5 (1st Cir.1993) (Breyer, C.J.); *Nicks v. United States*, 955 F.2d 161, 167 (2d Cir. 1992); *United States v. Stoneman*, 870 F.2d 102, 106 (3d Cir.), *cert. denied*, 493 U.S. 891, 110 S.Ct. 236, 107 L.Ed.2d 187 (1989); *United States v. Osser*, 864 F.2d 1056, 1059–60 (3d Cir.1988); *United States v. Drobny*, 955 F.2d 990, 996 (5th Cir.1992); *United States v. Marcello*, 876 F.2d 1147, 1154 (5th Cir.1989); *Stewart v. United States*, 446 F.2d 42, 43–44 (8th Cir.1971).

However, the Fourth and Ninth Circuits have held or at least indicated that a coram nobis petitioner need not show that he is suffering from an ongoing civil disability. The Ninth Circuit has "repeatedly reaffirmed the presumption that collateral consequences flow from any criminal conviction" based on the mootness principles developed in *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). *Hirabayashi*, 828 F.2d at 606. In *Sibron*, the Supreme Court held that an appeal in a criminal case was not moot even though the petitioner had completely served his sentence, because the government could not show that there was "no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction." 392 U.S. at 57, 88 S.Ct. at 1900. The Ninth Circuit applies the *Sibron* "no possibility" test in coram nobis cases, and requires the government to show that no civil disabilities exist. The Ninth Circuit recently reaffirmed this presumption in *Estate of McKinney v. United States*, 71 F.3d 779, 782 n. 7 (9th Cir.1995) (rejecting standing for decedent's estate or widow to petition for coram nobis relief).

The Fourth Circuit has stated in a footnote that felony convictions impose a "status" upon people that makes them "vulnerable to future sanctions" and impairs reputations and job opportunities. *United States v. Mandel*, 862 F.2d 1067, 1075 n. 12 (4th Cir. 1988), *cert. denied*, 491 U.S. 906, 109 S.Ct. 3190, 105 L.Ed.2d 699 (1989) (citation omitted). This footnote implies that the Fourth Circuit would presume injury based simply on the fact of conviction and would not require any showing of actual injury. The *Mandel* court granted the writ of coram nobis because the petitioners had contested their convictions at every available opportunity and had no remedy other than coram nobis. *Id.* at 1075.

We decline to decide whether coram nobis petitioners must prove the existence of an ongoing civil disability, however, because resolution of this issue is unnecessary in this case. Assuming, without deciding, that we can proceed on this petition for writ of error coram nobis without such proof, we conclude that Blanton's petition must be denied on the merits, as explained below in Part II(D).

## D. District Court's Refusal To Determine The Status Of McLellan's Law License

■ Blanton claims that the district court erred by failing to determine independently the status of McLellan's law license. The district court was correct, however, in its determination that it had no power to conduct such an inquiry. Lower federal courts have no jurisdiction directly to review final decisions of the courts of a state or similar jurisdiction in judicial proceedings. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 103 S.Ct. 1303, 1311–12, 75 L.Ed.2d 206 (1983); *Atlantic Coast Line R.R. v. Brotherhood of Locomotive Engi-*

*neers,* 398 U.S. 281, 296, 90 S.Ct. 1739, 1747–48, 26 L.Ed.2d 234 (1970). The lower federal courts' lack of jurisdiction to review state court proceedings, particularly in matters involving attorney licensing and discipline, also is consistent with principles of comity and federalism. As this court has stated,

> License to practice law, the continuation of such license, regulation of the practice and the procedure for disbarment and discipline are all matters that are within the province of an individual state.... The regulation of the practice of law, including the procedure of disbarment and discipline of members of the profession, is a function of state government.

*Saier v. State Bar of Michigan,* 293 F.2d 756, 759–60 (6th Cir.), *cert. denied,* 368 U.S. 947, 82 S.Ct. 388, 7 L.Ed.2d 343 (1961). We have also recognized that "[a] state's interest in regulating the practice of law within its borders is compelling, because lawyers are essential to the primary governmental function of administering justice." *Salibra v. Supreme Court of Ohio,* 730 F.2d 1059, 1063 (6th Cir.), *cert. denied,* 469 U.S. 917, 105 S.Ct. 295, 83 L.Ed.2d 230 (1984). Indeed, the Supreme Court also held that each state's interest in regulating the conduct of attorneys within each state is "of special importance" and requires federal courts to abstain from interfering with ongoing state bar disciplinary proceedings. *Middlesex County Ethics Committee v. Garden State Bar Ass'n,* 457 U.S. 423, 434–35, 102 S.Ct. 2515, 2522–23, 73 L.Ed.2d 116 (1982).

In this case, the Tennessee Supreme Court declined to enjoin McLellan from practicing law and treated him as if he were licensed after it closed its investigation. *See* Letter of 6/1/78 from Chief Justice Henry to McLellan, J.A. at 1093 (indicating that investigation into McLellan's license had been terminated without any action); May 9, 1994 Order of the Tennessee Supreme Court, J.A. at 1197 (transferring McLellan's license to disability inactive status). Thus, the Tennessee Supreme Court's treatment of McLellan as if he were licensed to practice in Tennessee constituted its final resolution of this matter.

■ The Tennessee Supreme Court's resolution of this matter was an adjudicative, as opposed to legislative or administrative, resolution because the court investigated, declared, and enforced liabilities as they stood on past facts and under existing law. *Feldman,* 460 U.S. at 479, 103 S.Ct. at 1313. *See also Fieger v. Thomas,* 74 F.3d 740, 744 (6th Cir.1996) (state bar disciplinary proceeding that required decision maker to investigate, declare, and enforce liabilities based on past facts and existing law was adjudicative in nature in *Younger* abstention context). In *Feldman,* the Supreme Court held that proceedings to determine whether to grant waivers of bar admission rules were judicial in nature, even though they did not involve formal adversarial hearings. As the Court explained,

> The proceedings were not legislative, ministerial, or administrative. The [court] did not "loo[k] to the future and chang[e] existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power." Nor did it engage in rulemaking or specify "the requirements of eligibility or the course of study for applicants for admission to the bar...." Nor did the [court] simply engage in ministerial action. Instead, the proceedings before the [court] involved a "judicial inquiry" in which the court was called upon to investigate, declare, and enforce "liabilities as they [stood] on present or past fact and under laws supposed already to exist."

*Feldman,* 460 U.S. at 479, 103 S.Ct. at 1313 (citations omitted). The Court noted that the proceedings before the District of Columbia Court of Appeals "did not assume the form commonly associated with judicial proceedings," but stated that the "nature and effect" of the decision, not the form of the proceedings, controlled. *Id.* at 482, 103 S.Ct. at 1314–15. Apart from certiorari review by the United States Supreme Court, the federal courts have no power to review the adjudicative determination by the Tennessee Supreme Court not to take action regarding McLellan's licensure, or its treatment of him as licensed to practice law.

Blanton cites several cases in which federal courts have held that unlicensed attorneys are per se ineffective. In the cases upon

which Blanton relies, however, the state courts themselves had determined that the attorneys at issue were not licensed to practice law and had "disbarred" them. *See United States v. Novak*, 903 F.2d 883, 885–86 (2d Cir.1990) (state court granted petition for disbarment of attorney who had obtained admission to the bar by fraud); *Solina v. United States*, 709 F.2d 160, 163 (2d Cir. 1983) (attorney pleaded guilty to charge of practicing law without a license). The federal courts simply relied on the state court findings and did not independently find that the attorneys were unlicensed and thus per se ineffective. The district court in this case relied on the Tennessee Supreme Court's decision not to pursue further action after the bar association determined that it would not take legal action regarding McLellan's status as a licensed attorney. Because the state courts were treating McLellan as a licensed attorney at the time of Blanton's trial, the district court had no power to reinvestigate McLellan's licensure. The district court properly recognized that it did not have the power to find that McLellan lacked a license and was thereby per se ineffective. Although the district court further held, based on this court's decision in *United States v. Whitesel*, 543 F.2d 1176 (6th Cir. 1976), *cert. denied*, 431 U.S. 967, 97 S.Ct. 2924, 53 L.Ed.2d 1062 (1977), that it would not adopt a per se ineffectiveness rule even if McLellan were unlicensed, we decline to review that determination since it is unnecessary to our decision in this case.

The district court did not err when it refused independently to determine the status of McLellan's law license. The Tennessee Supreme Court had undertaken an investigation and had declined to take action in connection with his license to practice law. Under these circumstances, we cannot hold that McLellan provided ineffective assistance of counsel per se. Thus, we affirm the denial of Blanton's petition for writ of error coram nobis.

**E. District Court's Failure To Hold An Evidentiary Hearing**

Finally, Blanton complains that the district court erred by failing to hold an evidentiary hearing. The district court's decision to deny an evidentiary hearing is reviewed for an abuse of discretion. *Green v. United States*, 65 F.3d 546, 548 (6th Cir. 1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 826, 133 L.Ed.2d 769 (1996). Because of the similarities between coram nobis proceedings and § 2255 proceedings, the § 2255 procedure often is applied by analogy in coram nobis cases. *See Pitts v. United States*, 763 F.2d 197, 198 n. 1 (6th Cir.1985) (per curiam) (noting that the standards for granting relief under § 2255 and coram nobis are substantially the same). In coram nobis and § 2255 proceedings, evidentiary hearings are not required when, as here, the record conclusively shows that the petitioner is entitled to no relief. *Fontaine v. United States*, 411 U.S. 213, 215, 93 S.Ct. 1461, 1462–63, 36 L.Ed.2d 169 (1973). Moreover, when the trial judge also hears the collateral proceedings, as was the case here, that judge may rely on his recollections of the trial in ruling on the collateral attack. *Blackledge v. Allison*, 431 U.S. 63, 74 n. 4, 97 S.Ct. 1621, 1629 n. 4, 52 L.Ed.2d 136 (1977). Because the record in this case conclusively shows that Blanton was not entitled to relief, the district court did not abuse its discretion when it declined to hold an evidentiary hearing.[2]

**III. Conclusion**

The district court did not err in rejecting Blanton's argument that it should independently determine the status of McLellan's law license and in declining to hold an evidentiary hearing. Therefore, we **AFFIRM** the district court's order denying Blanton's petition for a writ of error coram nobis.

---

2. At oral argument and in his brief in this court, Blanton appears to raise the other ineffective assistance of counsel allegations dismissed by the district court in 1992 only in part F (pp. 44–45) and only in the context of the denial of an evidentiary hearing. For the reasons explained above, the district court did not abuse its discretion in denying an evidentiary hearing on these ineffective assistance of counsel allegations.