**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 06a0459n.06**
**Filed: June 30, 2006**

**Case No. 04-1315**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| CETEWAYO ASKIA BRIGGS, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | **ON APPEAL FROM THE** |
| v. | ) | **UNITED STATES DISTRICT** |
| | ) | **COURT FOR THE WESTERN** |
| UNITED STATES OF AMERICA, | ) | **DISTRICT OF MICHIGAN** |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |
| ———————————————— | ) | |
| | ) | |
| | ) | |

**BEFORE: NORRIS and BATCHELDER, Circuit Judges; RICE[*], District Judge.**

**ALICE M. BATCHELDER, Circuit Judge.** Petitioner-Appellant Cetewayo Askia Briggs appeals the district court's denial of his motion to vacate sentence pursuant to 28 U.S.C. § 2255, arguing that he was entitled to an evidentiary hearing to show that his trial counsel was constitutionally ineffective in not properly counseling him to plead guilty rather than proceed to trial. Because the district court possessed sufficient information to find that Briggs's trial counsel was not ineffective under the standard of *Strickland v. Washington*, 466 U.S. 668 (1984), it did not abuse its discretion by refusing to hold an evidentiary hearing on the issue, and we affirm.

**BACKGROUND**

A jury convicted Briggs of conspiracy to manufacture cocaine base in violation of 21

---

[*]The Honorable Walter H. Rice, United States District Judge for the Southern District of Ohio, sitting by designation.

U.S.C. §§ 841(a)(1) and 846, and of manufacturing cocaine base in violation of 21 U.S.C. § 841(a)(1). The district court sentenced Briggs to, *inter alia*, 240 months' imprisonment, below the applicable guidelines range, but at the statutory maximum for his convictions. After exhausting his direct appeals, Briggs filed a motion to vacate sentence in the district court pursuant to 28 U.S.C. § 2255, in which he made two arguments that he had received ineffective assistance of counsel at trial that prevented him from making an informed decision as to whether to plead guilty rather than go to trial: first, that his trial counsel improperly assessed the merits of his defense, which left Briggs ignorant of the fact that he would almost certainly be convicted at trial; and second, that counsel did not advise him of the potential sentencing benefits of pleading guilty rather than proceeding to trial. Judge Bell, who presided over Briggs's pre-trial proceedings, trial, sentencing, and § 2255 motion, held that based on the record before him, and in light of his experience with Briggs, Briggs was not entitled to relief or an evidentiary hearing because his ineffective-assistance allegations "are either contradicted by the record or are inherently incredible." We granted a certificate of appealability on the issue of "whether trial counsel rendered ineffective assistance."[1] On appeal, Briggs challenges the denial of his motion to vacate sentence because of ineffective assistance of counsel, specifically arguing that he should have been afforded an evidentiary hearing to develop factually his argument that his counsel did not provide him constitutionally sufficient advice prior to trial.

---

[1]We also granted a certificate of appealability on the issue of "whether [Briggs's] sentence is illegal in light of the Supreme Court's recent decision in *Blakely v. Washington*, 124 S. Ct. 2531 (2004)." Briggs admits in his brief, however, that the Supreme Court's post-*Blakely* decision in *United States v. Booker*, 125 S. Ct. 738 (2005), holding the federal sentencing guidelines in violation of the Sixth Amendment and invalidating their mandatory nature, does not apply to cases on collateral review, such as Briggs's, pursuant to *Humphress v. United States*, 398 F.3d 855 (6th Cir. 2005). Because Briggs is clearly foreclosed from having the new rule of *Booker* applied to his case, we need not further address his challenge to the constitutionality of the guidelines.

**ANALYSIS**

**I.     The Applicable Law**

A prisoner who moves to vacate his sentence under § 2255 must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack. 28 U.S.C. § 2255. "To prevail under § 2255, [petitioner] must show a 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1968)).

In an action to vacate or correct the sentence, the district court is required to grant a hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. "We have observed that a Section 2255 petitioner's burden for establishing an entitlement to an evidentiary hearing is relatively light." *Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003) (internal quotation omitted). On the other hand, no evidentiary hearing is required if the petitioner's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (internal quotation omitted). Where, as in the instant case, the judge considering the § 2255 motion also conducted the trial, the judge may rely on his recollections of the trial. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996).

3

To demonstrate ineffective assistance of counsel, a "defendant must show that counsel's performance was deficient [and] . . . that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. To satisfy this test, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment," and that "counsel's errors were so serious as to deprive [petitioner] of a fair trial, a trial whose result is reliable." *Id.* When a petitioner's ineffective-assistance claim involves a decision whether to plead guilty, in order to demonstrate that he was prejudiced, the petitioner must show a "reasonable probability" that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Smith*, 348 F.3d at 551 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

## II.    Briggs's *Strickland* Claim Regarding His Trial Counsel's Advice As To The Merits Of The Case

Briggs's first ineffective-assistance argument is that his trial counsel, Craig Frederick (hereinafter, "Attorney Frederick"), was deficient in failing to assess competently the merits of Briggs's ability to obtain an acquittal were he to proceed to trial. Specifically, Briggs contends that Attorney Frederick should have determined prior to trial that important aspects of the testimony of Vonda Harris, Briggs's only witness at trial, would be excluded as hearsay. Harris was supposed to give testimony that would cast doubt upon the testimony of various witnesses who testified, subject to plea bargains of their own, that Briggs cooked cocaine with them. But when Attorney Frederick attempted to elicit this testimony from Harris at trial, the trial judge sustained the prosecutor's objection to the evidence as inadmissible hearsay. Briggs argues that Attorney Frederick should have known that the Federal Rules of Evidence would preclude such testimony, and that had Briggs known that his only witness would have much of her testimony excluded, he

4

would have recognized that he had no chance of an acquittal and pleaded guilty at a time when he could have garnered a sentence reduction for acceptance of responsibility.

The record was sufficient to permit the district court to review this argument, and the argument was properly rejected by the district court. First, there is no indication that Attorney Frederick's performance was deficient with respect to his handling of Harris. Attorney Frederick's affidavit in the § 2255 proceeding indicates that "[i]t was only through extensive work from [Attorney Frederick] that Ms. Harris even appeared for Mr. Briggs at his trial." Harris herself admitted that she only turned herself in to the police (she had warrants out for her arrest) the day before her testimony, in order to testify on Briggs's behalf, and the record indicates that Attorney Frederick is largely responsible for convincing Harris to do so in aid of his client. Moreover, Attorney Frederick's colloquy with the judge on the morning of the second and final day of trial makes it clear that he did not know, even at that late point in the proceedings, whether Harris would in fact show up to testify, or what exactly she would say on the stand, because she had just turned herself in the previous morning and been released that night. It is therefore not constitutionally deficient performance for Attorney Frederick not to have strategized every aspect of her testimony in advance; he was merely doing the best he could under difficult circumstances. Attorney Frederick was obviously mistaken in thinking he could elicit the testimony in question, but even the district judge himself misinterpreted the applicable hearsay rule according to our court's opinion in Briggs's direct appeal, *see United States v. Briggs*, 27 Fed. Appx. 547, 551 (6th Cir. 2001) (unpublished) ("Because a witness need not be a co-conspirator for the statement to be admissible under Rule 801(d), the district court erred in sustaining the prosecutor's objection on the cited basis. We nonetheless find that Defendant cannot satisfy the foundational requirements of the rule."), so we

5

cannot say that Attorney Frederick's miscalculation constituted an error "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *See Strickland*, 466 U.S. at 687.

Furthermore, even if Attorney Frederick's performance with regard to Harris were constitutionally deficient, the record before us precludes Briggs from showing that he was prejudiced for *Strickland* purposes: in other words, that there is a reasonable probability that his decision not to plead guilty would have been different had he thought Harris's testimony would not have made it before the jury. The reason for the lack of prejudice is simple: until the final day of trial, it was not at all clear to anyone, including Briggs, that Harris would even be available to testify, which means that in making his decision to go to trial rather than to plead guilty, Briggs could not reasonably have relied upon the admission of any of her testimony. Briggs does not claim that Attorney Frederick misled him from the start into believing that Harris would surely testify on his behalf, thus causing him to forgo pleading guilty; Briggs argues only that his assumption that Attorney Frederick could get Harris's testimony admitted into evidence caused him not to plead guilty. But since the record makes it clear that Briggs could not reasonably have assumed prior to trial that Harris would have been available to testify *at all*, he cannot now reasonably argue that he would have pleaded guilty had he known that portions of Harris's testimony might not be admissible. Briggs therefore cannot satisfy *Strickland*'s prejudice prong as to his argument concerning Attorney Frederick's assessments of the merits of his defense.[2]

## III. Briggs's *Strickland* Claim Based On His Trial Counsel's Advice Concerning The Potential Sentencing Benefits Of Pleading Guilty

---

[2]We also note that some of Harris's impeaching testimony was admitted–she testified that "they were lying on [Briggs]," and that "they lied on him, and that's wrong"–thus further weakening Briggs's argument that he was prejudiced by Attorney Frederick's handling of Harris.

6

Briggs's second ineffective-assistance argument is that Attorney Frederick did not discuss with him the potential sentencing benefits of pleading guilty rather than going to trial. Specifically, Briggs argues that he was never made aware that by pleading guilty he would be eligible for a three-point reduction in his offense level for acceptance of responsibility, U.S.S.G. § 3E1.1 (2000), and a two-point reduction under the safety valve, U.S.S.G. §§ 5C1.2, 2D1.1(b)(6) (2000). Briggs notes that these reductions potentially would have lowered his offense level from 38 to 33–from a range of 235-293 months' imprisonment to 135-168 months' imprisonment. Briggs claims that had he known of this disparity, there is a reasonable probability that he would have chosen to plead guilty rather than proceed to trial. With regard to this argument, the district court found that Briggs had "failed to allege a credible claim of ineffective assistance of counsel resulting in [his] decision to proceed to trial rather than plead guilty," and refused even to hold an evidentiary hearing to determine the nature of the pre-trial advice given to Briggs by Attorney Frederick regarding the potential sentencing benefits of pleading guilty. We are convinced that the district court did not abuse its discretion in refusing to hold an evidentiary hearing on this issue.

First, Briggs's argument with regard to the safety valve is a red herring. Eligibility for this reduction requires a defendant "not later than the time of the sentencing hearing" to cooperate with the government by providing information about the common scheme or plan. U.S.S.G. § 5C1.2(5). In other words, whether Briggs pleaded guilty or was convicted at trial is irrelevant to his eligibility for the safety valve. In fact, though Briggs did proceed to trial and was convicted, he still had five months before the sentencing hearing–during which time he was represented by counsel who had replaced Attorney Frederick–to attempt to meet the requirements for the safety valve, and the district court determined that he had not done so. Therefore, whether Attorney Frederick discussed the

7

safety valve with Briggs is irrelevant because it would not have affected his decision not to plead guilty inasmuch as eligibility for the safety valve has nothing to do with pleading guilty rather than going to trial. Even were we to assume that Attorney Frederick performed deficiently by not informing Briggs of the safety valve, Briggs certainly was not prejudiced under *Strickland*.

That leaves Briggs with the up-to-three-level-acceptance-of-responsibility reduction as his only potentially viable avenue of prejudice as a result of his not having pleaded guilty. Briggs could conceivably have received a three-level reduction under U.S.S.G. § 3E1.1 had he pleaded guilty in a timely manner prior to trial, reducing his offense level from 38 to as low as 35–in other words, from 235-293 months' imprisonment to 168-210 months' imprisonment. In his affidavit, Attorney Frederick swears that he informed Briggs "on numerous occasions about the federal sentencing guidelines, how they work, how they are scored, and how they would likely apply to him," including "discussing possible acceptance of responsibility deductions from his scoring, as well as all other associated potential scoring issues, including roles in the events, safety valve, and other pertinent issues." And Briggs admits that he had a "very brief" discussion with Attorney Frederick concerning pleading guilty during their first meeting. Nonetheless, Attorney Frederick avers, "Briggs was at no time ever willing to admit his guilt or accept any plea offers. Mr. Briggs made it very clear that the amount of time that he would likely be facing through a plea was unacceptable and he had no interest in accepting a plea offer." Briggs, however, contends now that had he known about possible reductions for acceptance of responsibility and the safety valve, in light of the weakness of his case, there is a reasonable probability he would have chosen to plead guilty rather than proceed to trial.

8

The district court did not abuse its discretion by rejecting this argument as "inherently incredible" and "contradicted by the record." Because the safety-valve issue is a red herring, Briggs's complaint here is that he was not properly informed of a chance to plead guilty in return for a certain sentence of approximately 14 to 17 years (168-210 months for a 35 offense level) rather than pursuing an acquittal at the risk of the statutory-maximum 20-year sentence he ultimately received. The record before the district court contained Attorney Frederick's affidavit vigorously refuting Briggs's contentions, *see Smith*, 348 F.3d at 553 (under similar circumstances, giving substantial weight to the substance of attorney's affidavit concerning the factual elements of his interactions with his client), and the statements of both defense counsel and counsel for the government at the final pre-trial that Briggs had no interest in entering a plea. In light of that record, it was not an abuse of discretion for the district court to decide, without holding an evidentiary hearing, that Briggs would not have pleaded guilty to crimes that would still have placed him at risk of a 17-year sentence, assuming he received the entire three-point-acceptance-of-responsibility reduction, and a 20-year sentence if he received no such reduction. The district judge's refusal to believe Briggs's current contentions as to his plea proclivities, in the face of Attorney Frederick's averments to the contrary, is further bolstered by that judge's already extensive familiarity with Briggs and the proceedings at issue, and the strong impression he formed of Briggs as being incredible. For example, at the suppression hearing the district judge "found considerable question concerning the credibility or believability of Mr. Briggs in front of the Court," and at sentencing characterized it as a "close question" whether Briggs had obstructed justice prior to and during trial, adding that "[i]f this Court were to combine some of this nonsense since [trial], the Court might well come to an obstruction [finding]." It was therefore not an abuse of discretion for the district court

9

to determine, based on its experience with Briggs and the record before it, that Attorney Frederick acted competently in his informing Briggs of the potential sentencing benefits of a guilty plea, and that in any event Briggs would not have pleaded guilty under the circumstances.[3]

## CONCLUSION

Accordingly, we **AFFIRM** the judgment of the district court finding no ineffective assistance of counsel, and hold that its refusal to conduct an evidentiary hearing was not an abuse of discretion.

---

[3]Briggs's reliance upon *Smith v. United States*, 348 F.3d 545 (6th Cir. 2003), does little to help his case. *Smith* involved a defendant who rejected a plea offer of 20 months' imprisonment and ultimately was convicted and sentenced to 262 months' imprisonment. Smith later filed a § 2255 motion complaining that his trial counsel was ineffective in not better explaining the wisdom of accepting the plea offer. The *Smith* court noted, quite reasonably, that "the disparity between the plea offer and the potential sentence exposure [was] strong evidence of a reasonable probability that a properly advised defendant would have accepted a guilty plea offer, despite earlier protestations of innocence." *Id.* at 552. *Smith* therefore held that the district court abused its discretion by not holding an evidentiary hearing to better determine the "nature and quality of the advice Smith received before he made his final decision to reject the government's proposed plea bargain." *Id.* at 553-54. The instant case is starkly different. Briggs was never offered a specific plea bargain by the government, and as the preceding analysis shows, his sentence exposure–even if we assume he would have received a three-point reduction for acceptance of responsibility, but especially viewing that as the open question it would have been at the time of the plea–would have been very close to the same whether or not he pleaded guilty, whereas Smith's ultimate sentence was 13 times that offered by the government in its plea bargain. Moreover, there is no indication in *Smith* that the defendant manifested the pervasive credibility problems in the eyes of the district judge that Briggs did in the instant case.