**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0776n.06
Filed: October 18, 2006

No. 05-2194

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| CHARLES H. KERKMAN, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| UNITED STATES OF AMERICA, | ) | THE WESTERN DISTRICT OF |
| | ) | MICHIGAN |
| Respondent-Appellee. | ) | |
| | ) | |
| | ) | |

Before: GIBBONS and ROGERS, Circuit Judges; HOLSCHUH, District Judge.[*]

**JOHN D. HOLSCHUH, District Judge.** Charles Kerkman appeals the district court's

denial of his petition for a writ of error *coram nobis.* Kerkman had asked the court to vacate his

1986 conviction for various fraud offenses. The district court held that Kerkman's petition was

barred by the doctrine of laches. In the alternative, the district court held that the petition lacked

merit. Kerkman has appealed on both grounds. Because we agree that Kerkman's petition is

barred by the doctrine of laches, we affirm.

**I.**

In 1979, Charles Kerkman and Robert Fischl formed two companies that entered into a

_____

[*] The Honorable John D. Holschuh, United States District Judge for the Southern District
of Ohio, sitting by designation.

multimillion-dollar contract with the Michigan Department of Transportation (MDOT).  The companies were to market, build, and operate an integrated tug-barge system to transport rail and truck traffic across Lake Michigan.  In connection with that project, Kerkman purchased tugboat engines from a German marine company, Krupp MAK Maschinenbau GmbH (MAK).  He was familiar with MAK from his previous work in the marine industry.  MDOT eventually began to suspect that MAK paid Kerkman an illegal kickback on the sale of the tugboat engines, and an investigation ensued.

On January 30, 1984, Kerkman and Fischl were indicted on numerous charges of wire fraud, mail fraud, transportation in interstate commerce of checks which had been taken by fraud, conspiracy to commit mail and wire fraud, conspiracy to impede the Internal Revenue Service, and submitting false tax returns.  According to the government, Kerkman solicited and received an illegal kickback from MAK in the amount of $232,719.45, which was to be added to the purchase price of the engines and absorbed by the State.  The government also claimed that Kerkman falsely reported this kickback as a "commission" on his company's tax return.  At trial, Kerkman argued that the $232,719.45 was not a kickback, but equitable compensation for his previous assistance in helping MAK break into the North American market through numerous customer referrals.

Kerkman's first trial ended in a mistrial.  He was retried, and on November 11, 1986 a jury convicted him on all but three counts of wire fraud.  He was sentenced on January 8, 1987 to two years in prison and five years probation.  He was also ordered to pay a $10,000 fine and to make restitution in the amount of $232,719.45.  This court affirmed his conviction and sentence.  *See United States v. Kerkman*, 866 F.2d 877 (6th Cir. 1989).  In 1991, Kerkman filed a motion to

2

vacate his sentence pursuant to 28 U.S.C. § 2255. The district court denied his habeas petition and this court affirmed. *See United States v. Kerkman*, No. 97-1786, 1998 WL 786964 (6th Cir. Oct. 29, 1998).

In January of 2004, Kerkman filed a petition for a writ of error *coram nobis*. He argued that his conviction should be vacated and a new trial ordered because the government had intentionally withheld certain exculpatory evidence at trial, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The evidence allegedly withheld included pages 94-100 of the grand jury testimony of MAK representative Guenther Kuehl. Kerkman claimed that these missing pages corroborated his claim that the payment from MAK was a commission for sales generated by his previous customer referrals. Kerkman also alleged that the government wrongfully withheld grand jury testimony of Special Agent James Dahl of the United States Postal Service about Dahl's interviews with witnesses who testified about Kerkman's customer referrals to MAK. Kerkman argued that there was a reasonable probability that he would have been acquitted had the government disclosed these portions of the grand jury transcripts.

On August 8, 2005, the district court denied Kerkman's petition on two grounds. First, the court found that the petition was barred by the doctrine of laches. The court noted that Kerkman has had the transcripts at issue in his possession since 1994 when he was permitted to copy forty boxes of documents in preparation for an evidentiary hearing held in connection with his habeas petition. Kerkman nevertheless made no effort to amend his habeas petition, which was still pending at that time. Instead, he waited until 2004 to file his petition for a writ of error *coram nobis*, nearly ten years after he had obtained possession of the transcripts and six years after this court had affirmed the district court's denial of his habeas petition. The district court

3

found that this was an unreasonable delay and that Kerkman had no "sound justification for failing to pursue this claim earlier." In the alternative, with respect to the alleged *Brady* violation, the district court held that Kerkman had failed to establish that there was a reasonable probability that the outcome of the trial would have been different had the missing transcript pages been provided prior to trial.

This appeal followed. Kerkman asks this court to vacate his 1986 conviction and enter an Order granting a new trial. He asserts two grounds on appeal. First, he argues that the district court erred in denying his petition on the basis of laches. Second, he argues that the district court erred in finding that the grand jury transcripts withheld by the government were not material to his defense.

## II.

We review the district court's legal conclusions de novo but review findings of fact for clear error. *Blanton v. United States*, 94 F.3d 227, 230 (6th Cir. 1996).

## III.

The All Writs Act, 28 U.S.C. § 1651(a), empowers a federal court to issue a writ of error *coram nobis*. *See United States v. Morgan*, 346 U.S. 502, 506 (1954). As explained in *Blanton*, the writ is used to vacate the illegal sentence or conviction of a petitioner who is no longer in custody. 94 F.3d at 231. Even though a sentence has been fully served, "the results of the conviction may persist. Subsequent convictions may carry heavier penalties, civil rights may be affected." *Morgan*, 346 U.S. at 512-13. In this case, Kerkman seeks to have his conviction vacated because he wants to hunt game with family and friends, but as a convicted felon, it is illegal for him to possess a firearm.

4

A petitioner seeking a writ of error *coram nobis*, however, has a heavy burden.  It is "an extraordinary writ, used only to review errors of the most fundamental character – *e.g.*, errors rendering the proceedings themselves invalid."  *United States v. Johnson*, 237 F.3d 751, 755 (6th Cir. 2001).  It can be granted only if the petitioner shows "(1) an error of fact; (2) unknown at the time of trial; (3) of a fundamentally unjust character which probably would have altered the outcome of the challenged proceeding if it had been known."  *Id.*  Kerkman contends that the government's failure to produce exculpatory portions of the grand jury testimony of Kuehl and Dahl rendered his trial fundamentally unfair.

**A.**

On appeal, Kerkman first challenges the district court's conclusion that his petition was barred by the doctrine of laches.  Kerkman argues that the writ of error *coram nobis* sets forth no time restraints but simply requires a "continuing disability."  While it is true that there is no specific time frame within which a petition must be filed, a petitioner must nevertheless use due diligence.  As the Ninth Circuit explained in *Telink, Inc. v. United States*, 24 F.3d 42 (9th Cir. 1994):

> Because a petition for writ of error coram nobis is a collateral attack on a criminal conviction, the time for filing a petition is not subject to a specific statute of limitations.  Rather the petition is subject to the equitable doctrine of laches.  Unlike a limitations period, which bars an action strictly by time lapse, laches bars a claim if unreasonable delay causes prejudice to the defendant.

*Id.* at 45 (internal citations and footnotes omitted).

Like the Ninth Circuit, the Sixth Circuit has held that the doctrine of laches may bar a petition for a writ of error *coram nobis*.  *See Blanton*, 94 F.3d at 231; *Spaulding v. United States*,

5

155 F.2d 919, 921 (6th Cir. 1946). As we noted in *Blanton*, "sound policy dictates that coram nobis claims be brought as early as possible to prevent the suffering imposed by illegal convictions and to prevent the government from being prejudiced in its efforts to reprosecute meritorious cases." *Blanton*, 94 F.3d at 231.

The district court did not err in finding that Kerkman's petition was barred by the doctrine of laches. Kerkman admits that he has had the allegedly withheld transcripts in his possession since 1994 but waited until 2004 to file his petition. The district court correctly found that Kerkman's ten-year delay was unreasonable. *See United States v. Nyhuis*, 40 Fed. Appx. 80, 81 (6th Cir. 2002) ("A ten-year delay does not constitute an exercise of reasonable diligence."). *See also Craven v. United States*, 26 Fed. Appx. 417, 419 (6th Cir. 2001) (finding a seven-year delay unreasonable).

Kerkman argues that he was unaware that he had the previously-withheld transcripts in his possession. He claims that they were buried among forty boxes of documents that were hurriedly copied in 1994 while his attorneys were preparing for an evidentiary hearing in his habeas action. According to Kerkman, his attorneys did not discover the transcripts, or understand their significance, until 2001. This argument, however, is directly contradicted by the fact that Kerkman's attorney cited pages 94 and 95 of Kuehl's grand jury transcript -- two of the pages that were allegedly previously withheld -- in the reply brief he filed in January of 1998 in connection with Kerkman's appeal of the district court's denial of the habeas petition. Moreover, Kerkman's current attorney raised the same issues in another petition for a writ of error *coram nobis* filed in 2001 on behalf of Kerkman's co-defendant, Fischl. Kerkman makes no effort to explain why he waited an additional three years to file his own petition.

6

Not only was Kerkman's ten-year delay unreasonable, but it is clear that the government would be severely prejudiced if the court were to vacate Kerkman's conviction and order a new trial. Kerkman was convicted nearly twenty years ago and his habeas proceedings were concluded nearly eight years ago. The government notes that most of the relevant documents have already been returned to their rightful owners or disposed of according to governmental record retention policies. Under the circumstances presented here, we conclude that the district court did not err in finding Kerkman's petition barred by the equitable doctrine of laches.

## B.

Because we find that the district court did not err in holding that Kerkman's petition was barred by the doctrine of laches, we do not reach the issue of whether the allegedly withheld pages of the grand jury transcripts were, in fact, material to Kerkman's defense.

## IV.

For the reasons set forth above, we affirm the district court's denial of Kerkman's petition for a writ of error *coram nobis*.