**Mitchell CODDINGTON, Petitioner,**

v.

**Sally LANGLEY, Respondent.**

**No. 99–CV–70393.**

United States District Court,
E.D. Michigan,
Southern Division.

March 15, 2002.

John F. Royal, Detroit, MI, for Mitchell Coddington, petitioner.

Mitchell Coddington, Coldwater, MI, pro se.

Vincent J. Leone, Michigan Department of Attorney General, Habeas Corpus Division, Lansing, MI, for Carol Howls, respondent.

## *OPINION AND ORDER ADOPTING IN PART AND REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND GRANTING PETITION FOR WRIT OF HABEAS CORPUS* [1]

TARNOW, District Judge.

### I. Introduction

Petitioner Mitchell Coddington is currently incarcerated at the Florence Crane Facility in Coldwater, MI. He filed a *pro se* petition for a *writ of habeas corpus* stating five grounds for relief: 1) malicious prosecution and abuse of process, 2) insufficient factual basis for the guilty plea, 3) involuntary guilty plea, 4) denial of motion to withdraw guilty plea, and 5) ineffective assistance of trial and appellate counsel. The Magistrate Judge issued a Report and Recommendation (R & R) denying all five grounds of relief sought by petitioner. Petitioner filed objections to the R & R.[2] He did not object to dismissal of the first ground, but he objected to dismissal of grounds two through five.

After review of the R & R and the petitioner's objections, the Court appointed an attorney for Mr. Coddington. On January 10, 2002, and continued on February 15, 2002, the Court held an evidentiary hearing on the voluntariness of the plea and ineffective assistance of trial and appellate counsel. After testimony on the matter, the Court finds Mr. Coddington received ineffective assistance of appellate

---

1. Law Clerk Amy Harwell provided quality research assistance.

2. Petitioner filed an amendment to his objections on May 31, 2201. Petitioner also filed an amendment to and clarification of his objections to the R & R, which this Court accepted in an order dated January 9, 2002.

counsel and the plea was involuntary. Counsel's failure to raise meritorious issues, including the involuntariness of the guilty plea, the insufficient factual basis, and the denial of the withdrawal of the guilty plea prejudiced Mr. Coddington. Therefore, the Court GRANTS Mr. Coddington's petition for a *writ of habeas corpus*.

## II. Substantive Facts and Procedural History

In March 1991, Petitioner Mitchell Coddington was charged with two counts of Criminal Sexual Conduct in the first degree and three counts of Criminal Sexual Conduct in the second degree. MICH. COMP. LAWS § 750.520c(1)(a). On July 13, 1992, Mr. Coddington pled no contest to three counts, one in the first degree and two in the second degree, with the agreement that the other two charges would be dismissed. After the plea, he went to the probation department and asserted his innocence. At sentencing on August 17, 1992, Mr. Coddington moved to withdraw his no contest plea based on his assertion of innocence. The judge allowed Mr. Coddington to withdraw his plea, and the case went to trial in March 1993. At trial, the jury could not reach a unanimous verdict. The court declared a mistrial.

A new date was set for trial. However, at an appearance before the judge on October 15, 1993, Mr. Coddington's attorney, Charles Novelli, advised the court that the defendant wanted to plead guilty. Under the plea agreement, Mr. Coddington would plead to five counts Criminal Sexual Conduct in the second degree in exchange for dismissal of both first degree charges.

During the plea colloquy, the judge asked Mr. Coddington if he could "read, write and understand the English language." Mr. Coddington answered, "No, I can't read and write that good." The judge recited all of the constitutional rights Mr. Coddington would be relinquishing by pleading guilty. The judge also asked Mr. Coddington if anyone was forcing him to waive his rights, whether there had been "an undue influence, compulsion or duress used against [him] to plead guilty," whether anyone had made any promises to him to induce a guilty plea, or whether anyone had threatened him. Mr. Coddington answered "no" to all four questions.

After being assured that Mr. Coddington understood his rights, the judge asked him a series of questions to establish a factual basis for his plea. The first exchange went as follows:

THE COURT: And could you tell the Court, please, what you did?

THE DEFENDANT: Touched her about five times around the 18th of March.

THE COURT: Where did you touch her?

THE DEFENDANT: Umm—

MR. NOVELLI: Did you touch her in a sexual fashion?

THE DEFENDANT: Yes, sir.

THE COURT: Where? Mr. Coddington, in order for this Court to allow you to plead guilty, the Court has to be convinced that you know what you're doing, first of all, and secondly, that what you did actually constitutes the crime that's charged. So you're going to have to tell me on the record.

THE DEFENDANT:     In her private parts.   In her private parts, I guess.

THE COURT:     Well, what do you mean, you guess?

. . .

THE COURT:     Well, I want to make sure-when you say private parts that it constitutes a part that is permitted by law.  Did you touch this young person in the vaginal area?

THE DEFENDANT:     No.

THE COURT:     Where did you touch her then?

THE DEFENDANT:     (no response).

THE COURT:     Under the circumstances I don't think that this Court can accept any pleas as this point in time.  If you want to talk to your client some more-it may be that he's nervous.  That's understandable.  I'll consider it later.  But right now this Court's not convinced that there's a factual basis on any plea.

(Plea Tr., 10/15/93 at 11–12).

After a short recess, the Court tried again to elicit a factual basis:

THE COURT:     Now I asked you what did you do.

THE DEFENDANT:     I touched her thighs and her butt with my hands.

THE COURT:     Did you do so for the purpose of sexual gratification?

THE DEFENDANT:     Pardon?

THE COURT:     Did you do so for the purpose of sexual gratification?

THE DEFENDANT:     No, sir.

MS. MOSS:
(assistant prosecutor)     Well, I believe he indicated before it was a sexual touching.

THE COURT:     It wasn't an accident, was it? . . . Did you deliberately do it?

THE DEFENDANT:     Yes.

THE COURT:     Why did you deliberately do it?

THE DEFENDANT:     Uh—I don't know.  I—

THE COURT:     Was it under her clothes or on top of her clothes?

. . .

THE DEFENDANT:     On top of the clothes.

THE COURT:     I'm going to pass this.

(Plea Tr., 10/15/93 at 13–14).

After the conference in the hall between defense counsel and the petitioner, the Court tried to elicit a factual basis a third time. The judge did not revisit any of the questions regarding whether Mr. Coddington had been threatened or pressured by anyone.

THE COURT: Okay, when you touched her, did you do so because you were a little bit sexually aroused?

MR. NOVELLI: He's telling me that he doesn't know what you mean by that ... Did you touch her for sexual purposes—for a sexual reason?

THE DEFENDANT: No.

MS. MOSS: Your Honor, the statute requires that it either be for a sexual purpose or it can reasonably be construed to be for a sexual purpose ... and the defendant, at this point in time, has indicated that he's touching the buttocks and the upper thighs of this child. If it's not for a spanking or if it's not for—

MR. NOVELLI: In the original inquiry he said for a sexual fashion.

THE COURT: You weren't spanking her, were you?

MR. NOVELLI: You weren't spanking her, were you?

THE DEFENDANT: No. Just tapping her you know.

THE COURT: But it wasn't—you weren't disciplining her?

THE DEFENDANT: No.

THE COURT: All right, and when you touched her on the thighs, show me where?

. . .

THE DEFENDANT: Here and here (indicating), you know. On the leg and butt like.

MS. MOSS: May I make just one inquiry?

THE COURT: Go ahead.

MS. MOSS: I believe when the judge was initially asking questions, you said that this was a sexual touch, is that right?

THE DEFENDANT: Yes. Yes.

THE COURT: Are you sure about that in your mind?

THE DEFENDANT: Yeah.

THE COURT: Mr. Coddington, this Court is convinced and I might add somewhat reluctantly—that the plea of guilty is understanding, voluntary and accurate, therefore, the Court's going to accept the plea of guilty to these five counts.

(Plea Tr., 10/15/93 at 15–18).

At the sentencing hearing on November 15, 1993, Mr. Coddington tried to withdraw his plea. He told the judge:

> the only reason I took this plea is because I was ascared that my mother couldn't appear in Court and I wanted to enter my plea. Because my mother just had a heart attack and she said that she will come to Court if she has to. And everybody was forcing me and saying this and saying that, and I didn't even want to say what I said. That's it.

(Sentencing Tr., 11/15/93 at 24). The prosecutor then reminded the judge that Mr. Coddington had already withdrawn his plea once. The judge would not allow Mr. Coddington to withdraw his guilty plea, and he was given five concurrent prison terms of five to fifteen years.

Mr. Coddington's sentence was incorrectly calculated. Mr. Coddington's appellate attorney, Jennifer Pilette asked the Michigan Court of Appeals to remand the case to trial court. The Michigan Appeals Court agreed to remand the case to the trial court. The trial court ruled the range was incorrect and lowered the sentence on July 11, 1994. Mr. Coddington was then sentenced to five concurrent prison terms of three to fifteen years.

After the new sentence, appellate counsel filed a motion for guidance with the Michigan Appeals Court. In her motion for guidance, appellate counsel told the Appeals Court that she:

> discussed with the Defendant that they had prevailed on the only issue raised on appeal and Defendant agreed to dismiss his appeal as of right, given a favorable resentencing. However, Defendant is completely illiterate and refuses to allow anyone else inside the prison to assist

him with his correspondence due to the nature of the charges.

(*People v. Coddington*, No. 170643, Motion for Guidance, September 24, 1994). She further stated in the motion that she had agreed to send all of Mr. Coddington's correspondence to his sister, who would read it to him. With that arrangement in mind, she sent an affidavit of dismissal after the re-sentencing to Mr. Coddington's sister, but the sister had moved without leaving a forwarding address. She also sent several copies to Mr. Coddington, but received no response. Counsel concluded in her motion for guidance that she:

> cannot move to perfect this appeal in light of her information and belief that Defendant–Appellant does not want to pursue this appeal· (having already been granted the requested relief); and counsel cannot proceed to dismiss the appeal because of this Court's policy that stipulations to dismiss indigent criminal appeals will not be honored unless accompanied by the Defendant–Appellant's signed affidavit to that effect.

In response to appellate counsel's motion for guidance, the Michigan Court of Appeals dismissed Mr. Coddington's appeal in an order dated November 8, 1994.

On February 27, 1997, Petitioner filed a *pro. se* motion for relief from judgment in the state trial court, asserting the same five grounds raised in the current petition. The trial court denied petitioner's motion for relief from judgment on June 12, 1997. *People v. Coddington*, No. 91–107735 FC. Petitioner's appeals to both the Michigan Court of Appeals and the Michigan Supreme Court were denied for failure "to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Coddington*, No. 204909 (Mich.Ct. App. Jan. 30, 1998); *People v. Coddington*, 459 Mich. 916, 589 N.W.2d 771 (1998).[3]

---

**3.** Michigan Court Rule 6.508(D) states in relevant part:

The defendant has the burden of establishing entitlement to the relief requested. The

On February 2, 1999, Petitioner filed a petition for a *writ of habeas corpus* in this Court. Respondent filed a motion to dismiss the petition on July 28, 1999 arguing the statute of limitations had expired thirteen days before petitioner filed his petition. The Magistrate Judge, in his first R & R in this matter, recommended denying respondent's motion to dismiss, finding that the statute of limitations should be equitably tolled. On May 17, 2000, this Court adopted the Magistrate Judge's R & R and denied respondent's motion to dismiss.

On March 29, 2001, the Magistrate Judge issued a second R & R regarding the merits of the petition. The petitioner filed objections on May 4, 2001 and an amendment on May 31, 2001. He also filed an amendment to and clarification of his objections, which this Court accepted on January 9, 2002. The Court appointed an attorney for Mr. Coddington and held an evidentiary hearing on January 10, 2002, which was continued on February 15, 2002.

At the evidentiary hearing, petitioner presented seven witnesses and respondent presented one. The petitioner's first witness, Paul Knuckman was a psychologist who worked for the Michigan Department of Corrections. Part of his duties included screening inmates for group sex offender therapy who were within two years of their earliest release date. Mr. Knuckman evaluated Mr. Coddington on June 12, 1996, to determine his eligibility for the therapy.

He also met with Mr. Coddington on at least one previous occasion. He testified that petitioner could not receive group sex offender therapy due to his failure to admit to "any sexually deviant behavior." (P's Exh. 2). He stated that he tried to include inmates whenever possible, so when the inmate denied the sexual crime, he attempted to discover whether the denial is heartfelt or feigned. He concluded that he could not say whether Mr. Coddington actually committed the crime, but he said petitioner's story of why he pled to the crime, but kept claiming innocence, was consistent and made sense to Mr. Knuckman. In support of this testimony, petitioner introduced Mr. Knuckman's report written at the time of the evaluation, which states:

> From the first interview, he has denied obtaining any sexual gratification from any of his contacts with his young daughter, his victim ... Over the course of our interviews he has admitted to touching his daughter in the genital area to check on and apply ointment on a rash ... When questioned closely he admits to touching his daughter in these, appropriately parental ways, but denies any sexual thoughts or motivations. Further, under close questioning, he states that when agreed to the plea bargain he thought he was admitting to touching his daughter in the genital area and did not understand the distinction between touching her for sexual gratification, which he denies, and touching

court may not grant relief to the defendant if the motion ...

(3) alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant demonstrates

    (a) good cause for failure to raise such grounds on appeal or in the prior motion, and

    (b) actual prejudice from the alleged irregularities that support the claim for re-

lief. As used in this subrule, "actual prejudice" means that,

    (ii) in a conviction entered on a plea of guilty ... the defect in the proceedings was such that it renders the plea an involuntary one to a degree that it would be manifestly unjust to allow the conviction to stand

her for physical health. When he states: "I admit I did it," he means that he admits to touching her genital area but consistently and steadfastly denies any sexual intent. After our discussions, I find it credible that he did not fully understand what he was admitting to in accepting the plea bargain. In this case, it does appear that Mr. Coddington has been consistent and is not "switching stories," admitting to the crime in court and denying it in prison.

(P's Exh. 2).

Three of the witnesses testified regarding Mr. Coddington's mental abilities. For example, Mr. Knuckman stated in his report that "[h]is file contains IQ scores, which are generally validated through interviews, which suggest that he has rather limited intellectual resources and that he functions on a very concrete level with a greatly restricted ability to reason abstractly" (P's Exh. 2).

Psychologist Margaret Getty did an initial evaluation of Mr. Coddington on December 22, 1993, as part of his intake into the Michigan Department of Corrections. In her report, dated January 6, 1994 and admitted as Petitioner's Exhibit 1, Ms. Getty stated that Mr. Coddington has a history of special education. She reported he obtained a full-scale IQ score of 79 and concluded his intellectual ability was "estimated to be in the borderline range." She also stated that "[h]e may have a difficult time reasoning through verbal problems and expressing himself."

Finally, Mr. James Crenshaw testified regarding Mr. Coddington's intellectual capacity. He was petitioner's school principal while petitioner was trying to obtain his GED. He prepared a report on July 30, 1998, which the Court admitted as Petitioner's Exhibit 3. In the report, Mr. Crenshaw stated that although Mr. Coddington was a hard worker, he was making slow progress on his GED requirements, stating that "[h]e is struggling to advance despite daily effort." He stated that he "devotes large amounts of time to his assignments, unfortunately, his progress is slow due to low retention." Due to Mr. Coddington's learning impairments, Mr. Crenshaw asked for and received a waiver of the requirement in Mr. Coddington's case that every inmate must complete his GED prior to parole.

Next, Mr. Coddington's mother, Mary Coddington, and sister, Donna Mygatt, testified. They were both present at the October 15, 1993 guilty plea hearing and testified about what occurred in the hallway during the plea hearing recesses. Both declared that Mr. Novelli and Mary Coddington were putting a lot of pressure on Mr. Coddington to plead guilty.

Mary Coddington stated that her son Michael had just received twenty-five to fifty years after insisting on a trial. Mr. Novelli told her Mr. Coddington would get the same amount of time if he went to trial. Since she was scared, she tried to pressure Mr. Coddington to plead guilty. She also testified that her son always looked to her for advice and guidance. She stated that he lived with her, and she was the caretaker of his Social Security check, which he received due to his mental disability. She reaffirmed the testimony of her affidavit, describing how Mr. Novelli became more and more belligerent with Mr. Coddington during the plea hearing recesses. She testified that Mr. Coddington kept saying that he was not guilty and he was not going to plead guilty, but Mr. Novelli continued to argue with him. She testified that Mr. Novelli called Mr. Coddington a "retarded bastard" and threatened to "bust his ass" unless he pled guilty.

Ms. Mygatt, petitioner's sister, confirmed her mother's testimony. She also testified that Mr. Novelli called her broth-

er "retarded" and threatened to "kick his ass" if he kept messing it up. She highlighted that Mr. Coddington relied "very heavily" on his mother's advice. She emphasized that Mr. Coddington did not want to plead guilty. She said that either her mother or Mr. Novelli suggested to Mr. Coddington that if he went to trial, he would be endangering his mother's life because of her bad heart. She also testified that "even up to the end when we walked in the courtroom the last time, I thought we were going for another trial." She testified that, at the hearing, the judge would ask Mr. Coddington something, and Mr. Novelli would nudge him in the arm. Then Mr. Novelli would whisper something in his ear, and Mr. Coddington would answer the judge. Finally, she testified that Mr. Novelli told Mr. Coddington that to plead guilty, he would simply have to say that he touched his daughter's genital area, and that he probably did not understand the difference between that and sexual gratification.

Mr. Novelli was the next witness. He testified that he did not think he could win a retrial, especially now that the prosecution had seen his entire case. He testified that Mr. Coddington always maintained his innocence in all conversations with him. He also testified that he did not remember the actual vote count, but the jury in the first trial was not eleven to one-it was more deadlocked than that.

He described Mr. Coddington's limited intellectual functioning as a "processing problem." He stated that Mr. Coddington "is a frustrating character, because he seems to understand, but then the question is did you lose him someplace or did he get lost or is he still on the same wavelength as you. Did his picture on this tv tube get fuzzy?" He said that he explained that the contact had to be of a sexual nature to Mr. Coddington at least five times. He admitted to getting angry and frustrated with Mr. Coddington's inability to plea, and he admitted using profanity.

Finally, he testified that this case "disturbed" him because the bargain they struck is now an "illusory bargain." He stated at the time he struck the bargain, the parole board had a policy of granting parole to offenders who served their minimum sentence and had remained ticket-free. During Mr. Coddington's confinement, a new parole board was appointed. Now, they have a very strong presumption of not granting parole to those who were convicted of criminal sexual conduct. Also, one cannot get parole unless they complete group sexual offender therapy, and one cannot get the therapy without admitting guilt in the crime. Thus, he thought Mr. Coddington would serve only three to five years on his sentence, which was a good bargain at the time. Now it appears he will have to serve the maximum of fifteen years because he will not admit his guilt. He concluded that he would have never advised Mr. Coddington to take this plea if he thought he would have to serve the maximum sentence.

Mr. Coddington was the final witness for the petitioner. He testified that he relied heavily on his mother for advice. He stated that Mr. Novelli called him names and told him he was going to "beat his ass" if he did not plead. He testified that he did not go to the courthouse that day with the intention of pleading guilty. He testified that Mr. Novelli told him, "if you plead guilty you will get a little bit of time . . . you can get out, prove you're innocent." He stated that he did not understand the terms the court was using, and he did not understand the nature of the crime to which he was pleading.

He also testified that he told his appellate attorney that he was innocent, that he had been forced to plead guilty, and that

his attorney threatened him. He said that at their meeting, Ms. Pilette said that she was going to go with a "time cut." He thought she was going to "go after the attorney too," but she did not. He testified that she was "not acting as my attorney like I wanted her to be."

The eighth and final witness to testify was Appellate Counsel Jennifer Pilette, the respondent's only witness. She did not have any independent recollection of her discussion or discussions with Mr. Coddington. Instead, she read her notes from her visit to petitioner into the record. Her notes indicated that she recognized the insufficient factual basis of the plea was a very good issue for appeal, but petitioner did not want to risk the life sentence he might get if re-tried on the original first degree counts. . She testified that she does not remember, but she does not believe she visited Mr. Coddington after she successfully obtained some sentencing relief. She confirmed that it is the defendant's decision whether or not to plead guilty. Finally, like Mr. Novelli, she testified that parole board practices have changed since Mr. Coddington was sentenced, and if she knew then what she knows now, her advice to him may have been different.

## III. Standard of Review

Title 28 U.S.C. § 2254 governs the authority of federal courts to consider applications for *writs of habeas corpus* submitted by state prisoners. This section was amended by the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996. The AEDPA applies to all petitions filed after April 24, 1996. Since Mr. Coddington's petition was filed after April 24, 1996, the AEDPA applies to this case.

Section 2254 provides that a *writ of habeas corpus:*

shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless [it]

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Franklin v. Francis,* 144 F.3d 429 (6th Cir.1998).

Thus, under the ADEPA, a district court may grant *habeas* relief in three circumstances. Two are found in § 2254(d)(1). According to § 2254(d)(1), a district court must ask whether the state court decision was (1) "contrary to" or involved (2) an "unreasonable application" of clearly established federal law.

Recently in *Williams v. Taylor,* the United States Supreme Court explained the proper application of the "contrary to" clause:

A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.... A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

529 U.S. 362, 120 S.Ct. 1495, 1519–20, 146 L.Ed.2d 389 (2000).

In *Williams,* the United States Supreme Court also elucidated the "unreasonable application" clause of § 2254(d)(1), defining it in the following way:

[A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's ap-

plication of clearly established federal law was objectively unreasonable...

An unreasonable application of federal law is different from an incorrect application of federal law.... Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 1521–22.

The third basis on which a district court can grant *habeas* relief is found in § 2254(d)(2), the "unreasonable determination" of facts clause. Under § 2254(d)(2), district courts must defer to the state court's factual conclusions unless they are based on an "unreasonable determination" of the facts in light of the evidence presented in the state court. Additionally, district courts must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1); *see also Cremeans v. Chapleau,* 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous"). A petitioner may only rebut this presumption of correctness with clear and convincing evidence. *Warren v. Smith,* 161 F.3d 358, 360–61 (6th Cir.1998), *cert. denied,* 527 U.S. 1040, 119 S.Ct. 2403, 144 L.Ed.2d 802 (1999).

## IV. Analysis

Petitioner claims five grounds for relief in his *habeas* petition:

I. The defendant was convicted, being innocent of the charges that were brought against him in a malicious and abusive use of process in violation of the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

II. Defendant's conviction is infirm where the trial court failed to establish a factual basis for defendant's plea of guilty, having refused to accept said plea twice, and having accepted the plea without being satisfied that defendant was in fact guilty of the elements necessary to support defendant's conviction for the crime charged.

III. The trial court, prosecution and defense counsel arbitrarily and impermissibly exerted the authority of their positions against defendant, inducing defendant to plead guilty, violating the state and federal mandates requiring that a plea of guilty be voluntary.

IV. The trial court constitutionally erred in not allowing defendant to withdraw his plea of guilty at sentencing when defendant claimed his innocence and asserted that he was forced to enter his plea.

V. Defendant was denied his Sixth Amendment right to the effective assistance of both trial and appellate counsel.

The Report and Recommendation (R & R) filed by the Magistrate Judge recommends dismissing all the grounds. In his objections, Mr. Coddington does not object to dismissal of the first ground, regarding malicious prosecution and abuse of process. The remaining grounds are addressed below.

### A. Ineffective Assistance of Appellate Counsel

Respondent has repeatedly asserted that Mr. Coddington's petition should be procedurally barred due to failure to raise these substantive issues in his first state appeal; instead, petitioner only raised a sentencing issue. Mr. Coddington raised all the issues in the current petition in subsequent state appeals for relief, but both the Michigan Court of Appeals and

the Michigan Supreme Court held he was procedurally barred under M.C.R. 6.508(D). Thus, the state court has never addressed the merits of his substantive claims raised in the pending *habeas* petition.

■ Normally, failure to present the claims at the state level can bar them from *habeas* review. *Wainwright v. Sykes,* 433 U.S. 72, 84–86, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Couch v. Jabe,* 951 F.2d 94, 96 (6th Cir.1991). Mr. Coddington, though, has asserted ineffective assistance of appellate counsel for failure to raise the substantive issues on the first appeal where the sentencing error was raised. As both the respondent and petitioner agreed at the evidentiary hearing, Mr. Coddington must prevail on his ineffective assistance of appellate counsel claim to overcome procedural default and reach the merits of his claims. *See Edwards v. Carpenter,* 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000); *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

■ A criminal defendant is entitled to effective assistance of counsel on his first appeal of right. *Evitts v. Lucey,* 469 U.S. 387, 396, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). To prevail on ineffective assistance of appellate counsel, Mr. Coddington must show that: 1) his counsel's performance was "objectively unreasonable," and 2) he was "prejudiced," meaning "a reasonable probability that, but for his counsel's [actions], he would have prevailed on his appeal." *Smith v. Robbins,* 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); *see also Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ There is no constitutional right to have every non-frivolous issue raised on appeal. *Jones v. Barnes,* 463 U.S. 745, 754, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Rather than showing incompetence, the "hallmark of effective appellate advocacy" is "winnowing out weaker arguments on appeal and focusing on" those more likely to succeed. *Smith v. Murray,* 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (internal citations omitted). However, appellate counsel can be "constitutionally deficient in omitting a dead-bang winner even while zealously pressing other strong ... claims." *Page v. U.S,* 884 F.2d 300, 302 (7th Cir.1989). A "dead-bang winner" has been defined as "an issue which was obvious from the trial record." *United States v. Cook,* 45 F.3d 388, 395 (10th Cir.1995); *see also Caver v. Straub,* 2001 WL 1254842 (E.D.Mich. Oct.19, 2001) (unpublished).

■ In the present case, appellate counsel testified that she recognized that Mr. Coddington had a very good claim on insufficient factual basis and withdrawal of his guilty plea. However, she failed to raise those issues on direct appeal, instead seeking only sentencing relief. She testified that Mr. Coddington told her he did not want to seek relief on anything other than the sentence, because he did not want to risk the life sentence that first degree Criminal Sexual Conduct carries. Mr. Coddington, on the other hand, testified that he thought the appeal would "go after the lawyer" too.

Finding appellate counsel's performance "objectively unreasonable" would be difficult, if all the Court had before it was each side's testimony regarding their understanding of what issues would be appealed. However, the reason there is nothing but oral testimony is due to appellate counsel's failure to obtain a written waiver from Mr. Coddington stating that he only wanted to seek relief on his less significant claims.[4] This Court will construe the failure to

4. A letter to Mr. Coddington after visiting him    at the prison confirming their discussion

make a written record against appellate counsel.

In addition, this Court finds that it was "objectively unreasonable" for appellate counsel to fail to ensure Mr. Coddington received notice of her intention to withdraw his appeal. There is ample testimony that Mr. Coddington has limited intellectual functioning. It is also undisputed that Mr. Coddington is illiterate. In her Motion for Guidance to the Michigan Court of Appeals, counsel demonstrated that she was aware of his illiteracy when she wrote, "Defendant is completely illiterate and refuses to allow anyone else inside the prison to assist him with his correspondence due to the nature of the charges." She testified that she was to send all of Mr. Coddington's correspondence to his sister, who had agreed to read it to him. Pursuant to that arrangement, after obtaining the sentencing relief, she sent Mr. Coddington's sister the paperwork necessary to voluntarily dismiss his appeal. However, the sister had moved without leaving a forwarding address. She sent several letters with the same information directly to Mr. Coddington, but she acknowledged that she knew he could not read it and would not allow anyone else to read it to him. There is no record that she visited him to ensure he understood the consequences of dismissing the appeal.

Furthermore, both trial and appellate counsel testified that it is defendant's decision whether or not to plead guilty, no matter what the judge, counsel and prosecutor think would be best for the defendant. However, it appears that neither counsel truly applied that principle in this case. Here, the record demonstrates that all of the people Mr. Coddington trusts were trying to wear him down and make him plead, "for his own good," but as soon as he got out from under their influence, he reasserted that he did not want to plead. For example, he pled no contest, but immediately afterwards, he proclaimed his innocence to the probation department, and he told the judge he wanted to withdraw his plea. Similarly, after the mistrial, the court eventually accepted petitioner's guilty plea after threats from his counsel and pressure from his mother, but afterwards, when the pressure ended, he again wanted to withdraw his plea. He has maintained both his innocence and his desire to go to trial in all subsequent proceedings. By not raising the coercion evident from the record, counsel ratified trial counsel's abusive actions and ignored her client's wishes.

Finally, the Court recognizes that but for the change in parole practices, this case would not be here; Mr. Coddington would already be paroled. The testimony at the evidentiary hearing established that under the parole board policies in place at the time, counsel believed Mr. Coddington would be paroled near his minimum release date. Thus, the minimum release date reduction from five to three years obtained on appeal was favorable relief. Instead, under new parole board policies it appears Mr. Coddington will serve the full fifteen years. He has already served more than eight years. Counsel cannot be held responsible for advice that was sound at the time but in hindsight is no longer sound. However, even with the unforeseen change in parole board policies, the failure to ensure Mr. Coddington knew the consequences of dismissing his appeal was still unreasonable.[5] For all of these rea-

---

would also have been sufficient (assuming, of course, she ensured someone could read it to him). Instead, at the evidentiary hearing, counsel had very little independent recollection of her representation of Mr. Coddington and was only able to read her few notes from the conference.

**5.** The American Bar Association's Model Rules of Professional Conduct are instructive here. Rule 1.3, Comment 3 states:

sons, the Court finds counsel's performance was objectively unreasonable, satisfying the deficiency prong.

Next, the Court must inquire whether counsel's deficient performance "prejudiced" petitioner; that is, whether petitioner would have prevailed on appeal if the issues had been raised. The petitioner raises four possible ways he was prejudiced: his guilty plea was involuntary, there was an insufficient factual basis for the plea, the judge did not allow him to withdraw his guilty plea, and his trial counsel was ineffective. Each claim is addressed below.

### B. *Involuntary Guilty Plea*

Under *Boykin v. Alabama*, a plea must be both voluntary and intelligent. 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Whether a plea is voluntary "for the purposes of the federal Constitution is a question of federal law," *Marshall v. Lonberger*, 459 U.S. 422, 431, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983), not within the presumption of correctness afforded state findings of fact. *Caudill v. Jago*, 747 F.2d 1046, 1050 (6th Cir.1984). Under *Brady v. United States*, a plea of guilty is involuntary when it is "induced by threats," "misrepresentation," or "by promises that are by their nature improper." 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (quoting Shelton v. United States, 246 F.2d 571, 572 n. 2 (5th Cir.1957)). "The voluntariness standard may be violated by coercion in the form of impermissible pressure of counsel on his client to plead guilty." *Ray v. Rose*, 392 F.Supp. 601, 619 (W.D.Tenn.1975).

The Magistrate Judge recommended dismissing this claim and placed much emphasis on Mr. Coddington's statement on the record that he was not coerced. While the Magistrate Judge cites case law stating that an admission of guilt at the plea colloquy is entitled to great deference, Mr. Coddington is claiming he was coerced to make that statement in the first place. *See United States v. Estrada*, 849 F.2d 1304 (10th Cir.1988) (while admissions by petitioner on the record stating there was no coercion carry a strong presumption of validity, the petitioner contends he was coerced to make that admission, and "we cannot say that his denial at the hearing of receiving threats is conclusive. We hold [petitioner] has 'the right to support [his claims] by evidence'"). In addition, the record demonstrates that Mr. Coddington was coerced severely by counsel after his in-court statement that he was not coerced. The court took two recesses to allow defense counsel to talk to his client. After the second conference with counsel, the court "reluctantly" accepted Mr. Coddington's plea. Petitioner was not asked again after the sessions in the hall with defense counsel whether anyone had coerced or threatened him.

The other cases cited by the Magistrate Judge do not defeat Mr. Coddington's claim. For example, the R & R cites *Blackledge v. Allison* as stating that "[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal." 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). However, *Blackledge* goes on to say, while a plea where petitioner stated on the record that he was not coerced is a formidable

Unless the relationship is terminated as provided in Rule 1.16, a lawyer should carry through to conclusion all matters undertaken for a client ... Doubt about whether a client-lawyer relationship still exists should be clarified by the lawyer, preferably in writing, so that the client will not mistakenly suppose the lawyer is looking after the client's affairs when the lawyer has ceased to do so.
MODEL RULES OF PROF'L CONDUCT R. 1.3, cmt. 3 (1999).

barrier, it is not "invariably insurmountable;" thus, "federal courts cannot fairly adopt" a *per se* rule precluding a claim of a coerced plea. *Id.* at 75, 97 S.Ct. 1621. The Court found petitioner's allegations that his lawyer promised him the sentence would only be ten years, but it ended up being seventeen to twenty-one years, were not "so vague and conclusory" to warrant summary dismissal. *Id.* at 75–76, 97 S.Ct. 1621 (quoting *Machibroda v. United States*, 368 U.S. 487, 495, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962)). The Court remanded the case for a possible evidentiary hearing, but at the least, plenary consideration of the claim. *Id.* at 82, 97 S.Ct. 1621.

Similarly, in *Mabry v. Johnson,* another case cited in the R & R, the quote used says that "it is well settled that a voluntary and intelligent plea of guilty . . . may not be collaterally attacked." However, Mr. Coddington is claiming it is not a voluntary plea of guilty, so this case does not apply to his claim.

While the majority of cases surveyed usually hold guilty pleas are not coerced, there are a few cases where appeals courts have remanded cases on the voluntariness of the plea. For example, in *Flippins v. United States,* without "undertaking even the slightest investigation," the defense attorney told his client to plead guilty, because he could get him a suspended sentence from his "old friend the judge." 747 F.2d 1089, 1090 (6th Cir.1984). He also told his client that the judge did not like people talking back, so he should just agree with the judge's questions. *Id.* The Sixth Circuit remanded the case for an evidentiary hearing, because the court found, despite petitioner's admissions on the record about the lack of coercion, the defendant was silenced by defense counsel's promises. *Id.* at 1092. Similarly, in *Iaea v. Sunn,* the defense counsel threatened to withdraw unless defendant pled guilty. The Ninth Circuit remanded for

an evidentiary hearing on the voluntariness of the plea. 800 F.2d 861, 868 (9th Cir.1986). Finally, in *People v. Blewett,* the Supreme Court of Michigan, without comment, overturned an appellate court ruling that a plea was voluntary where there was some ambiguity on the record whether the defendant was actually admitting guilt. 382 Mich. 793, 171 N.W.2d 649 (1969), *rev'g* 18 Mich.App. 327, 170 N.W.2d 897 (1969) (facts set forth in court of appeals decision).

By contrast, in *United States v. Carr,* the court held alleged coercion, where the defense attorney called his client "stupid" and "a f——ing idiot," was not enough to render the plea involuntary. 80 F.3d 413, 416 (10th Cir.1996). They held that the ultimate decision was still petitioner's to make. *Id.* While the court does not go any further into the facts, in contrast to the allegations presented in this case, it does not appear that defense counsel threatene physical violence. In *United States v. La Vallee,* defense attorneys asked defendant's mother to place pressure on him to plead guilty, so he would not get the death penalty. 424 F.2d 457, 459 (2nd Cir.1970). The court held that the pressure was not enough to render the plea involuntary, while it might be if the same statements were made by the state or the judge. *Id.* at 461. "The realities of the defendant's situation and the shattering effect of an unsuccessful defense are the very ingredients of a rational choice for one in Brown's position." *Id.* In this case, Mr. Coddington claims pressure from his mother, and standing alone, that might not be enough. However, coupled with the threat of physical violence from defense counsel, it is enough to place the voluntariness of Mr. Coddington's plea in doubt.

■ Mr. Coddington has offered specific evidence that his plea was coerced. He alleges, and the testimony supports his

allegation, that he was screamed at and threatened with a beating by his own counsel. In addition, the petitioner has limited intellectual functioning. The record indicates that he, therefore, placed heavy reliance on his mother and others for guidance in decision-making. As explained *supra*, part A, under the influence of those he trusted with decisions, he stated a desire to plead guilty. After reflection each time, he reasserted his innocence and desire to go to trial.

The Court recognizes the difficulties faced by counsel and trial judges in trying to ensure a defendant, especially one with limited intellectual functioning, is apprized of all of his rights while balancing a defendant's reluctance to admit guilt. However, it is ultimately the client's decision whether to plead guilty. MODEL RULES OF PROF'L CONDUCT R. 1.2(a) (1999) ("the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify").

There is a tension between what was stated on the record at the time of the plea, and what is now clear from the entire record in this case. The entire record demonstrates that the decision was taken away from Mr. Coddington when he was coerced by counsel and others into pleading guilty. This finding satisfies the prejudice prong of the ineffective assistance of appellate counsel inquiry and is also a separate constitutional ground that warrants *habeas* relief.

### C. *Insufficient Factual Basis for Guilty Plea*

At the plea hearing, the court passed the case twice before "reluctantly" accepting Mr. Coddington's plea on the third try. There are two versions for why he was unable to plea correctly the first two times. The respondent argues Mr. Coddington was too embarrassed or nervous to say the words until the third time. Petitioner argues he would not admit touching her sexually, because he is innocent. Thus, during the plea hearing, he told the truth-he only touched his daughter on her legs and thighs, in a non-sexual way, so the court was not satisfied with his plea. Mr. Coddington is mentally challenged. He thinks only on a concrete level. Therefore, when asked in a straightforward manner whether it was a sexual touch, he unequivocally denied it. However, later, the court was less straightforward, and he did not understand the question to which he responded. He concluded he never admitted the touching was of a sexual nature. The Michigan statute under which he was convicted requires that element; therefore, there is an insufficient factual basis for his plea.

As the Magistrate Judge and the respondent indicate, *habeas* relief is only available for violations of federal law, and "there is no constitutional requirement that a trial judge inquire into the factual basis of a plea." *Roddy v. Black,* 516 F.2d 1380 (6th Cir.1975), *cert. denied,* 423 U.S. 917, 96 S.Ct. 226, 46 L.Ed.2d 147 (1975); *United States v. McGlocklin,* 8 F.3d 1037, 1047 (6th Cir.1993) (en banc) (impliedly overruled on other grounds) ("While it is advisable to conduct an on-the-record inquiry into the factual basis for a plea, the failure of a state trial judge to do so will not serve as a basis for *habeas* relief"). Therefore, this ground cannot serve as an independent basis for granting *habeas* relief.

However, this ground is relevant to whether Mr. Coddington was prejudiced by his appellate counsel's failure to raise insufficient factual basis on direct appeal. Under Michigan law, a defendant may challenge the factual basis of his guilty plea on appeal. *People v. Barrows,* 358 Mich. 267, 272, 99 N.W.2d 347 (1959), *superceded by rule on other grounds; see*

*also* MICH. COMP. LAWS § 768.35 (West 2001).[6] To establish a factual basis in this case, the court had to find Mr. Coddington admitted the elements of second degree Criminal Sexual Conduct. In 1993, at the time the plea was taken, the statute stated:

(1) A person is guilty of criminal sexual conduct in the second degree if the person engages in sexual contact with another person and if any of the following circumstances exists:

(a) That other person is under 13 years of age.

MICH. COMP. LAWS § 750.520c (West 1991). In 1993, "sexual contact" was defined as:

the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification

MICH. COMP. LAWS § 750.520a (West 1991).

However, the record indicates that Mr. Coddington did not understand the sexual terms used by the court. The testimony at the evidentiary hearing demonstrated Mr. Coddington's limited mental capacity. Also, Mr. Knuckman stated that it was credible that Mr. Coddington's statements at his plea hearing were consistent with his continued assertions of innocence. After a careful review of the plea transcript, the Court finds that Mr. Coddington did not understand that he had admit to touching his daughter for the purpose of sexual gratification. The plea transcript suggests that when he said the touch was a "sexual touch," he was admitting to touching his daughter in her private parts, not that he was touching for the purpose of sexual gratification. When asked directly about sexual gratification, he denied it. There is no second degree Criminal Sexual Conduct, if the touching cannot be "reasonably construed as for the purpose of sexual arousal or gratification." Therefore, the Court finds that there was an insufficient factual basis for the plea. Although not an independent ground for *habeas* relief, Michigan law requires a factual basis. The Court finds that insufficient factual basis is a "dead-bang winner," because Mr. Coddington would have prevailed if appellate counsel had raised it. Thus, the Court concludes that appellate counsel's failure to raise it was prejudicial, satisfying the prejudice prong of his ineffective assistance of appellate counsel claim.

**D.  *Withdrawal of Guilty Plea***

■ Mr. Coddington claims the trial court erred by not allowing him to withdraw his guilty plea before sentencing. However, once again, there is no federal right to withdraw one's guilty plea, so it is not a cognizable claim in a petition for *habeas corpus* without a showing that petitioner was denied fundamental fairness. *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir.1983), *cert. denied*, 464 U.S. 962, 104 S.Ct. 396, 78 L.Ed.2d 338 (1983).

■ However, once again, this ground is relevant to whether Mr. Coddington was

---

6. MICH. COMP. LAWS § 768.35 (West 2001) states:

Whenever any person shall plead guilty to an information filed against him in any court, it shall be the duty of the judge of such court, before pronouncing judgment or sentence upon such plea, to become satisfied after such investigation as he may deem necessary for that purpose respecting the nature of the case, and the circumstances of such plea, that said plea was made freely, with full knowledge of the nature of the accusation, and without undue influence. And whenever said judge shall have reason to doubt the truth of such plea of guilty, it shall be his duty to vacate the same, direct a plea of not guilty to be entered and order a trial of the issue thus formed.

prejudiced by his appellate counsel for failure to raise it on direct appeal. There is no absolute right to withdraw a guilty plea. *People v. Bencheck*, 360 Mich. 430, 104 N.W.2d 191 (1960). However, where:

> a defense of innocence is asserted at the time of a request to withdraw the plea, and the request is not obviously frivolous and is made before commencement of trial and before sentence, the plea should be granted. The right we deal with here is the right to a jury trial, and even what may prove a well-founded belief in defendant's guilt on the part of the trial judge should not impede the exercise of that right.

*Id.* at 433, 104 N.W.2d 191.

Petitioner has maintained his innocence throughout these proceedings.[7] As stated *supra*, part C, the Court finds that his continued assertions of innocence are plausible. At the plea hearing, there was confusion about the terms used to describe the sexual acts to which petitioner was supposed to plead. Besides those few ambiguous statements at the plea hearing, the record clearly indicates that petitioner has repeatedly asserted his innocence at all other times. The Court finds this is also a "dead-bang winner," because Michigan courts would have found it was an abuse of discretion for the trial court to not allow Mr. Coddington to withdraw his guilty plea. Thus, the failure to raise the issue on appeal was prejudicial, satisfying the second prong of the ineffective assistance inquiry.

## D. *Ineffective Assistance of Trial Counsel*

The Court concludes the three issues raised *supra* in parts B, C, and D are sufficient to demonstrate ineffective assistance of appellate counsel. Thus, the Court grants Mr. Coddington's petition for *habeas corpus* without reaching the issue of ineffectiveness of trial counsel.

## V. Conclusion

For the reasons stated above, this Court ADOPTS IN PART the portion of the Magistrate Judge's Report and Recommendation, which recommends dismissing petitioner's first ground of relief. Thus, the Court DISMISSES petitioner's claims regarding malicious prosecution/abuse of process.

However, this Court REJECTS IN PART the portion of the Report and Recommendation that dismisses petitioner's third and fifth ground. Thus, the Court GRANTS petitioner's *writ of habeas corpus* on involuntariness of the guilty plea and ineffective assistance of appellate counsel. The Court declines to reach whether petitioner also received ineffective assistance of trial counsel.

The Court MODIFIES the Magistrate Judge's recommendation on petitioner's

---

7. Petitioner did not explicitly state that he wanted to withdraw his plea, because he was innocent. He did tell the judge he only pled because he was forced, which implies a claim of innocence. More explicitly, petitioner told the probation department he was innocent, and that assertion was in the probation report. Also, his attorney told the court that "he maintains that he did not do this act." (Sentencing Tr., 11/15/93 at 23). It is clear from the court's statements that the court knew Mr. Coddington's claim of innocence was a major part of the reason for his desire to withdraw his plea. The court stated,

I was the one who took the plea. I'm convinced that when I took the plea—and I wouldn't have accepted it if I wasn't convinced, that you were guilty of the offense and you gave me a factual basis for establishing the acceptance of the plea. So for you to come in here now and deny it, I just don't buy that ... I'm convinced, based on your plea, that you're guilty of the offenses that you were charged with. (Sentencing Tr., 11/15/93 at 25).

second and fourth ground. The Court agrees that insufficient factual basis and denial of a motion to withdraw a guilty plea are not cognizable on *habeas* review. However, they are both relevant to the prejudice prong of ineffective assistance of counsel.

IT IS ORDERED that Petitioner Coddington is unconditionally released, unless a new date for a trial is scheduled within 90 days.